# N. R. Bagley Co., Inc., Appellant, *v.* Cameron.

*Constitutional law — Special legislation — Constitution, article III, section 7—Act of June 14, 1923, P. L. 779—Securities Act—Dealers in securities — Trade — Registration of dealers—Saving clause as to portion of act—Presumption—Title of act—Notice—Blue sky laws.*

1. The word "trade" is of very broad significance and includes not only the business of exchanging commodities by barter, but by buying and selling for money generally, and also dealing for profit in securities.

2. The Act of June 14, 1923, P. L. 779, known as "the Securities Act," in designating who, as a dealer, may sell stocks, bonds and other securities does not employ such unreasonable classification as to make it special legislation regulating trade, in violation of article 3, section 7, of the Constitution of Pennsylvania.

3. It cannot be said that the act, by excepting from the broad definition of dealer, persons engaged in handling twelve specific kinds of transactions therein enumerated, is special legislation within the constitutional prohibition.

4. Whenever part of an act found to be unconstitutional can be severed from the rest of the statute without destroying its entirety of thought, and the act contains a clause which saves the remainder when a portion is declared unconstitutional, such clause creates a presumption that the legislature would have passed the act notwithstanding its unconstitutional parts, always leaving open, however, the questions whether the statute in its reduced form remains a workable piece of legislation, or, for any other reason, is unconstitutional.

5. If some of the twelve exceptions enumerated in the act of 1923, should fall when directly attacked in a proper case, it could still stand as a workable piece of legislation.

6. The title is sufficient to put all persons who deal in securities on investigation as to its contents.

7. The word "securities" as used in the act, comprehends not only stocks and bonds, but other evidences of ownership in or credit relationship to corporations, etc.

*Dealers in securities—Regulation of registration—Investigation —Reputation of dealer—False statements—Discretion of court— Evidence—Hearing de novo.*

8. The Act of June 14, 1923, P. L. 779, is intended to regulate the registration of stock and bond dealers and salesmen rather than the issuance of securities.

9. The purpose of the act is to provide for an investigation to determine whether the securities are being offered to the public honestly and in good faith without an intent to deceive or defraud.

10. The act does not contemplate the approval by the commissioner of banking of the business expediency of the plan of financing a corporation whose securities are to be offered for sale by the dealer.

11. An applicant for registration under the act, whose application has been refused, cannot, on appeal, object that there was a more minute examination into the affairs of the corporation issuing the securities than was warranted by the act, if it appears that the investigation was conducted for the most part along lines laid down by the applicant itself.

12. Nor can the applicant object that the court went into the question of reputation although the commissioner did not find it was of bad reputation, where it appears that the applicant first undertook to prove its good reputation.

13. In considering an application by a corporation for registration under the act where it appears that the corporation had only recently been organized by members of a partnership, the court may, under section 5 of the act, take into account the reputation gained by these men in their prior business associations in the same line of trade.

14. Where a rejected applicant for registration applies to the court of common pleas for a hearing, such hearing is de novo, and in its conduct the ordinary rules of evidence apply, although not necessarily with all the strictness that would be pursued in a trial at common law.

15. Upon such hearing the court must, under sections 7 and 19 of the act, pass upon the good repute of the applicant, and whether or not his proposed plan of business is unjust, unfair and inequitable, if the commissioner has passed upon adversely these points. If the court finds any of them against the applicant, the commissioner's decision must be sustained.

16. The omission of the act to define the words "reputation" and "plan" was probably deliberately made in order not to tie unduly the hands of either the commissioner or the courts in passing on the registration of dealers in securities.

17. The court does not abuse its discretion in refusing registration to a corporation dealing in securities, where it appears that officers and owners of stock in the company were also officers and owners of stock in the companies in whose securities it dealt, and that the selling company participated in the formulation of false statements put out by the companies issuing the securities.

*Appeals—Practice—Printing exhibits.*

18. The Supreme Court will not discuss in detail exhibits not included in the printed record.

Argued November 26, 1924. Appeal, No. 15, May T., 1924, by plaintiff, from order of C. P. Dauphin Co., Commonwealth Docket, 1923, No. 64, dismissing petition for registration as a dealer in securities, in case of N. R. Bagley Company, Inc., v. Peter G. Cameron, Commissioner of Banking. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for registration under Securities Act of June 14, 1923, P. L. 779. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

Petition dismissed. Petitioner appealed.

*Error assigned* was, inter alia, order, quoting it.

*Ruby R. Vale,* with him *Geo. J. Edwards, Jr.,* and *Frysinger B. Evans,* for appellant.—The Securities Act relates to the registration and regulation of those who for profit sell or deal in securities and is not regulatory of their issuance or supervisory of their value.

A "dealer" must be registered if he is of "good repute," and his "proposed plan" of sale or dealing in securities is "fair, just and equitable."

The proceedings in the court, on petition to reverse the refusal to register, should be de novo, but restricted as to issue to the specific reasons given by the commissioner and such additional reasons as intervened from the date of his refusal to that of the hearing before this court.

The good repute of this applicant is neither in issue, nor denied, should be found as a fact, and every inference favorable to applicant drawn therefrom.

The applicant's method or plan of doing business is fair, just and equitable.

Section 2 of the statute offends article III, section 7, of the Constitution of Pennsylvania: Com. v. Casey, 231 Pa. 170; Com. v. Schumaker, 255 Pa. 67; Ayar's App., 122 Pa. 266; Com. v. Gilligan, 195 Pa. 504; Seabolt v. Comrs., 187 Pa. 318; Sayre Boro. v. Phillips, 148 Pa. 482; Davis v. Clark, 106 Pa. 377; Scranton v. Silkman, 113 Pa. 191; Com. v. Zacharias, 181 Pa. 126.

*J. W. Brown,* Deputy Attorney General, with him *G. W. Woodruff,* Attorney General, for appellee.—The legal presumption is in favor of the constitutionality of the act because the act expresses the judgment of the legislative branch of the government on the question with which it deals: Com. v. Vrooman, 164 Pa. 306; Craig v. Church, 88 Pa. 42; Wheeler v. Phila., 77 Pa. 338; Hall v. Geiger-Jones Co., 242 U. S. 539; Central Lumber Co. v. Dakota, 226 U. S. 157; German Alliance Ins. Co. v. Lewis, 233 U. S. 398; Lindsley v. Gas Co., 220 U. S. 61.

The Securities Act of 1923 is not unconstitutional, in violation of article III, section 7, of the Constitution of Pennsylvania: International Harvester Co. v. Missouri, 234 U. S. 199; Lindlsey v. Gas Co., 220 U. S. 61; Heisler v. Colliery Co., 260 U. S. 255; Knisely v. Cotterel, 196 Pa. 614; Registration of Campbell, 197 Pa. 581.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 5, 1925:

Appellant corporation was denied registration as a "dealer" under the Act of June 14, 1923, P. L. 779, known as "The Securities Act"; hence this appeal.

The controlling questions involved may be considered under two general heads: (1) Does the statute offend article III, section 7, of the Constitution of Pennsylvania, which provides: "The General Assembly shall not pass any local or special law......regulating labor, trade, mining or manufacturing"? (2) If the statute is constitutional, were the powers therein granted to the

commissioner of banking and to the court below applied without abuse?

In Pocono Ice Co. v. Am. Ice Co., 214 Pa. 640, 647, we said that the word "trade" "was of very broad significance" and included "not only the business of exchanging commodities by barter but......of buying and selling for money......generally"; following this definition, we now hold that dealing for profit in securities comes within the word "trade" as used in our Constitution.

Appellant contends that the Act of 1923, in designating who, as a dealer, may sell stocks, bonds and other securities, employs such unreasonable classification as to make it special legislation, regulating trade, in violation of the Constitution.

The act provides that "The term 'dealer' shall include every person or company, other than a salesman [whose registration is provided for elsewhere in the statute], who engages for profit......in selling, offering for sale or delivery, or soliciting subscriptions to or orders for, or undertaking to dispose of, or to invite offers for or inquiries about, or dealing in any manner in, any security or securities within this state." It then enumerates twelve exceptions to the above broad definition of dealer, saying that "None of the following transactions shall constitute the person or company engaged therein a 'dealer' within the meaning of this act." Appellant contends that many of the "transactions" referred to could not, on any reasonable basis, be classified separately for purposes of legislation without causing the acts covering them to be special in character, and, therefore, it follows that, by excepting from the general definition of dealer persons handling such transactions, the legislature enacted special legislation.

Section 34 states that "The provisions of this act are severable, and, in the event that any provision thereof should be declared unconstitutional, it is hereby declared that the remaining provisions would have been enacted notwithstanding such judicial deter-

mination of the invalidity of any particular provision or provisions in any respect." While the efficacy of this modern legislative provision has not heretofore been particularly discussed by us, it is referred to, and its effectiveness conceded, in the recent case of Com. v. Snyder, 279 Pa. 234, 244. Without reviewing in detail the relevant authorities, it may be said that wherever part of an act found to be unconstitutional can be severed from the rest of the statute without destroying its entirety of thought, a saving clause, such as we have here, creates a presumption that the legislature would have passed the act notwithstanding its unconstitutional parts, always leaving open, however, the questions whether the statute in its reduced form remains a workable piece of legislation, or, for any other reason, is unconstitutional: in support of this conclusion of law, see Rothermel v. Meyerle, 136 Pa. 250, 265; Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 309; State v. Hackmann, 205 S. W. (Mo.) 12, 14; Nixon v. Allen, 234 S. W. (Ark.) 45, 47; Springfield G. & E. Co. v. City of Springfield, 292 Ill. 236, 126 N. E. 739, 743; State v. Howat, 191 Pac. (Kans.) 585, 588; Wattles v. Upjohn, 179 N. W. (Mich.) 335, 343; People v. Mason, 186 N. Y. Supp. 215, 225; Shea v. North-Butte Mining Co., 179 Pac. (Mont.) 499, 504; People v. Travis, 231 N. Y. 339, 132 N. E. 109, 112, 15 Am. L. R. 1319; Nipges v. Thornton, 119 Wash. 464, 206 Pac. 17; Connolly v. Union S. P. Co., 184 U. S. 540, 565.

When the saving clause in section 34 is considered, we cannot hold the Securities Act unconstitutional. It may be, though we do not so decide, that some of the twelve exceptions above referred to will fall when directly attacked in a proper case; but, even should this occur, we are of opinion that the act still could stand as a workable piece of legislation; and, such being the fact, we abide by the legislative declaration that it would have been passed without those parts, if any, which later might be declared unconstitutional.

We have not overlooked the contention, ably made by counsel who filed a brief under rule 61 of this court, to the effect that, if all the exceptions to the general definition of dealer be stricken down, the title to the statute becomes misleading because it refers to the legislation as "An act for the registration and regulation of *certain* individuals and entities selling......securities *defined herein,*" etc.; whereas, with the several exceptions eliminated, the act would be one for the registration of all individuals selling all kinds of securities. It is sufficient answer to this contention to say that the title to an act is adequate if phrased so as to put on investigation as to its contents all persons thereby affected; this the present title certainly does. In other words, no one who deals in securities as a business would be so misled by this title as to think his case not covered by the act and, for that reason, forego an investigation which, if the title were more general, he might have made.

Many states in the Union have passed similar statutes, popularly known as "Blue Sky Laws," and, while the provisions of the various acts differ in certain respects from each other, the underlying purpose present in all of them is, in one way or another, to protect the investing public. The United States Supreme Court has sustained the constitutionality of the Ohio, South Dakota and Michigan statutes, the only ones thus far brought before that tribunal: see Ohio Statute (Supplement of Page and Adams, Ohio General Code, vol. II, sections 6373-1, 6373-24), sustained in Hall v. Geiger-Jones, 242 U. S. 539; South Dakota (Session Laws of 1915, ch. 275), sustained in Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559; Michigan (No. 46 Public Acts 1915, p. 63), sustained in Merrick v. N. W. Halsey Co. et al., 242 U. S. 568. For other such statutes whose constitutionality has been upheld by State Supreme or Federal Districts Courts, see: Arkansas (Laws of 1913, p. 904), sustained by the U. S. District Court in Standard Home Co. v. Davis, 217 Fed. 904; California (Deerings Consol.

Supp. to Codes and General Laws, 1917-21, p. 1447), sustained by the California Supreme Court in People v. Simonsen, 220 Pac. 442; Florida (ch. 6422, Acts of 1913), sustained by the Florida Supreme Court in Ex Parte Taylor, 68 Fla. 61, 66 So. 292; Illinois (Act of June 10, 1919, L. 1919, p. 351), sustained by the Illinois Supreme Court in Stewart v. Brady, 300 Ill. 425, 133 N. E. 310; Kentucky (Laws 1920, ch. 125, sections 883e 1 to 883e 26), sustained by the Kentucky Supreme Court in King v. Com., 197 Ky. 128, 246 S. W. 162; North Carolina (ch. 196 Laws 1911 and ch. 156, Laws of 1913), sustained by the North Carolina Supreme Court in State v. Agey, 88 S. E. 726; Tennessee (Shannon's Code, pars. 3273a 121 to 3273a 136), sustained by the Tennessee Supreme Court in Biddle v. Smith, 256 S. W. 453.

But to return to our own statute: when the provisions here particularly involved are considered and such heed is given to all its other parts as the present appeal warrants, we cannot say the court below erred in refusing to hold the Securities Act special legislation inhibited by the organic law, and therefore unconstitutional in its entirety.

This brings us to a consideration of the remaining points in the case; and, in discussing them, when the term "securities" is used, we mean it in the sense in which that word is employed in the act, as comprehending not only stocks and bonds but other evidences of ownership in or credit relationship to corporations, etc.

While the legislative enactments of some states, such as those in Florida and California (cited supra) attempt to control the financing of corporations, our act is intended to regulate the registration of stock and bond dealers and salesmen rather than the issuance of securities. Section 15 is the only part of the statute which indicates a purpose to regulate in any manner the securities themselves. This section provides that "the commissioner may, at any time, require a dealer to file with him a list

of securities which, within this State, he has offered for sale or has advertised within the preceding six months, or which he is at the time offering for sale or advertising,......and......, if it shall appear that any of such offerings......have not been made honestly and in good faith, but have been made with intent to deceive or defraud, he may prohibit the dealer from selling or offering such securities......" Since this section does not refer to registered dealers, but simply to dealers, and gives the commissioner the right to call "at any time" for a list of securities, he may require of all applicants for registration the information in question; but, after obtaining this information, the act does not contemplate the approval by the commissioner of the business expediency of the plan of financing a corporation whose securities are to be offered for sale by the dealer; what it contemplates is precisely that which is set forth above,—an investigation to determine whether the securities are being offered to the public "honestly and in good faith" without "an intent to deceive or defraud." Here, the court below has found, upon sufficient proof, that the stocks dealt in by appellant were not offered honestly and in good faith, but, on the contrary, that the plan pursued by it in marketing these securities employed printed matter which evidenced a purpose to deceive and defraud the public in that it contained many deliberate misstatements of facts of a character on which investors would be apt to rely. It is unnecessary to discuss the proofs, to recite the findings of the court below on the particular deceptions which appellant practiced, or to approve all such findings in order to justify the court's ultimate conclusion; it is sufficient to say that we have read the evidence and it confirms the statement just made as to the nature of the literature issued by appellant in its campaign to sell the stocks in which it dealt. We may add, however, that appellant failed to include in his printed record the exhibits in question,

which should have been done if he wished them discussed by us in detail.

It may be that the court below erred in some of its rulings on evidence, but these mistakes were not such as to affect the final determination of the case, and, therefore, we shall not discuss them. Perhaps there was a more minute examination into the affairs of the corporations whose securities were to be sold, than ordinarily would be warranted under the act, but assuming, while not deciding, such to be the fact, the investigation was conducted for the most part along lines laid down by appellant. For instance, details of the organization and financing of these companies were first elicited by counsel for the applicant, who entered few exceptions on the record when his lead was followed by the deputy attorney general. Again, while complaint is now made that, since the commissioner did not find the applicant to be of bad reputation but refused registration solely on the ground that its proposed plan of business was unfair, unjust and inequitable, the court below should not have gone into the question of reputation at all; yet, when the record is read, we find that appellant first undertook to prove its good reputation, and pursued this course throughout the hearing in the court below.

While on the subject of reputation, it may be noted that the date of appellant's application for registration was shortly after its incorporation and before it had had time to establish for itself a reputation as a selling agent, therefore we cannot say the court erred either in considering the fact that this concern was composed of men who, immediately prior to its chartering, had been associated together in a partnership for the purpose of selling securities, or in taking into account the reputation gained by these men in their prior business associations in the same line of trade; particularly since section 5 of the act provides that applications for registration shall "contain......such additional information as to appli-

cant's previous history, record, and associations, as may be required by the commissioner."

Section 19 of the act provides that "Any dealer, salesman or agent aggrieved by any decision of the commissioner" may petition the Court of Common Pleas of Dauphin County for a hearing, and that on this hearing the court shall consider both the grounds set up by the commissioner in justification of his decision and "such other grounds as shall in the meantime occur or be discovered"; further, that "the court's decision shall consult only the rights of the [applicant for registration] and the protection of the public," without regard to "mere technical irregularities in the procedure of such commissioner." We agree with the court below that this means a hearing de novo, and that, in the conduct of such hearing, the ordinary rules of evidence apply, although not necessarily with all the strictness that would be pursued in a trial at common law. In other words, at such hearing, much must be left to the discretion of the court so far as the admission and rejection of evidence is concerned.

Section 7 of the act provides: "If the commissioner is satisfied that the applicant is of good repute and that the proposed plan of business of the applicant is not unfair, unjust or inequitable, he shall register the applicant." This necessarily means that, if the commissioner finds the applicant not to be of good repute, or that his proposed plan of business is unjust, unfair and inequitable, he shall refuse to register him; and section 19, supra, when read in connection with this section 7, means that, on a hearing de novo, the court of common pleas also must pass upon the points above mentioned, and, if it finds any of them against the applicant, it shall sustain the decision of the commissioner.

Here, while the court below received evidence as to the reputation of the present applicant, and discusses this phase of the case in its opinion, it states but two conclusions of law, (1) that "the proposed plan of business

of the applicant is unfair, unjust and inequitable," and (2) that "The commissioner,......in refusing to register the petitioner, proceeded in conformity with the Securities Act." While the act contains many definitions, it fails to define the words "reputation" and "plan," and these omissions probably were deliberately made in order not to tie unduly the hands of either the commissioner or the courts in passing on such matters; but, for the purpose of determining the instant case, it is necessary to say only, we are not convinced that the court below erred in its conclusion that the material misstatements of fact made by the applicant, in the printed matter which it used in disposing of the stocks of the two corporations in whose securities it dealt, showed a plan of business which involved a deliberate purpose to deceive the purchasing public. To this we may add, that one of the two corporations in question was practically owned by the same individuals who constituted the selling company (applicant here), and that the other corporation had as a director the president of the selling company; hence the present is not a case where the dealer, simply and in good faith, adopted statements made by the concern whose securities it was engaged to dispose of. On the contrary, it is one where the court below had evidence which warranted a finding that the selling company participated in the formulation of many, if not most, of these false statements, and then circulated them for the purpose of bringing money into its own coffers; so there was no abuse of discretion in the refusal to register appellant.

What we have said is sufficient to dispose of the present controversy without going into other more or less relevant questions discussed in the briefs, but we take occasion to state that the written adjudication of the court below is approved only so far as indicated in this opinion.

The order assigned as error is affirmed at the cost of appellant.