Insuranshares Corporation *v.* Pennsylvania Securities Commission, Appellant.

Argued October 10, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Michael E. Stroup,* Deputy Attorney General, with him *Cyrus E. Woods,* Attorney General, for appellant.

*Ira Jewell Williams, Jr.,* with him *Francis Shunk Brown, Beidleman & Hull* and *James M. Beck,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 25, 1929:

The Commonwealth appeals from the order of the Court of Common Pleas of Dauphin County, reversing the action of the securities commission in refusing to register Insuranshares Corporation as a dealer in securities and directing that it be registered.

In Bagley v. Cameron, 282 Pa. 84, we passed upon the powers of the securities commission and in that opinion are to be found the guiding principles to determine the case in hand. While that proceeding involved the construction of the Act of June 14, 1923, P. L. 779, the statutes with which we are dealing (Act of April 13, 1927, P. L. 273) is a reënactment in essence of the former one. We there said that the act is intended to regulate the registration of stock and bond dealers and salesmen rather than the issuance of securities and "does not contemplate the approval by the commission of the business expediency of the plan of financing a corporation whose securities are to be offered for sale by the dealer...... [but] an investigation to determine whether the securities are being offered to the public 'honestly and in good faith' without an intent to deceive or defraud."

The securities commission in the action which it took, denying appellee the right to register would appear to have misapprehended our ruling. It did not base its determination on "whether the securities are being offered to the public, honestly and in good faith without an intent to deceive or defraud,"—indeed a conclusion of dishonesty, bad faith, deception or fraud could not be reached from the evidence before it;—but upon its judgment of the business expediency of the plan of financing, which we said is not its function. This will appear by a brief statement of the material facts: Appellee is in the nature of an investment trust with a capital of $1,000,000. It puts this capital into stocks, in the main those of insurance companies. When purchased, they are turned over to the Farmers Loan & Trust Company of New York as trustee and against them are issued trust certificates of two classes, class A having a par value of $20 and class B with no par value. Class A certificates pay 3% interest, class B have no fixed rate of return, income from them, if any, to be derived from the net earnings of the company, from dividends on the stocks owned, and from their sale. These securities are sold by appellee in combination, for the par value of the class A ones, $20, plus the sale commission, each purchaser receiving a class A and class B certificate. For selling them appellee charges a commission of 9½ or 10%, depending upon when it disposes of them. When it has sold sufficient of the certificates, it proceeds to purchase further securities and issues a new series of certificates for sale to the public, and so continues issuing new series as it makes new purchases from funds received from those disposed of. It had sold $12,000,000 of certificates at the time of the hearing before the commission. As part of its plan of doing business, appellee organized another corporation called Insuranshares Management Corporation. The individuals composing the two companies were substantially the same. The trust funds and securities were under the

joint control and management of both corporations, the dominant idea, however, being that the management corporation shall bring expert skill to the enterprise in the purchase and sale of securities. For its services the management corporation receives 18 shares of class B certificates for each 100 shares of class A and class B certificates sold, but nothing in cash. It can profit only provided earnings are made for the class B shares. Unless its management is a success, the managing corporation will receive nothing. Appellee is an investing company, and, like all such, the most important factor for success is wise and prudent management. The trustee for its services receives a commission on gross income ranging from one per cent to two and a half per cent. There are many other details of the business and its management, set out at length in the briefs, not necessary to be recited, as they play no part in our determination.

The factor which seems to have had the most potency in the commission's mind in reaching its determination not to register appellee, is the 18 shares of class B certificates which go to the management corporation for each 100 shares of the two classes of certificates sold by appellee. As to this the commission found, "That Insuranshares Management Company will receive approximately 15% of the dividends and increase of the value of the securities deposited in the trust fund over and above the 3% paid to the holders upon the par value of class A certificates by the issuance to it of 18 shares of class B certificates for each 100 shares of combination class A and class B certificates," and concluded that this was a greater amount than should be paid, and that there was no necessity for the establishment of a separate management company. With this the commission had nothing to do. It is not a regulator of business. If it had been set up as such it might be of doubtful constitutional existence. The commission further determined that the net return of less than 3% on the class A shares after charges were deducted was an inadequate return. Here

again it was trenching upon something with which it had no concern. Every investor knew just what he would receive and was of course counting upon a much greater return upon the class B shares. The commission also considered the circumstance that by the provisions of the trust agreements the holders of the certificates are denied voice in the control and management of the trust fund as one militating against appellee's right to registry. This is true of the great majority of trusts of all kinds, under wills, by deeds and by contract,—the beneficiaries have no voice in control and management. This is a matter of business expediency also outside of the commission's province, as is the circumstance, criticized by it, that the trust agreements do not set forth what stocks have been purchased, with their amounts.

The commission raises no question as to appellee's business reputation, which is good, nor does it find that the securities being offered to the public are not being offered honestly and in good faith nor with an intent to deceive or defraud; it declined to register appellee because it did not approve its plan of business. The court below properly held that refusal for this reason was unwarranted.

The order of the court below is affirmed at appellant's cost.