## Securities of Public Service Companies

NEELY, Special Deputy Attorney-General; October 7, 1932.—You have asked us to advise you whether The Securities Act of April 13, 1927, P. L. 273, is intended to apply to the registration of public service companies and securities issued by such companies.

The Securities Act is intended to regulate individuals and entities dealing in securities, rather than to regulate the issuance of securities or to control the financing of corporations. Such was the interpretation placed on the Act of June 14, 1923, P. L. 779, by the Supreme Court in N. R. Bagley Co., Inc., v. Cam-

eron, 282 Pa. 84 (1925). That statute was essentially reënacted by the Act of 1927, now in effect. In that case the Supreme Court said, at page 91:

"While the legislative enactments of some states . . . attempt to control the financing of corporations, our act is intended to regulate the registration of stock and bond dealers and salesmen rather than the issuance of securities. Section 15 is the only part of the statute which indicates a purpose to regulate in any manner the securities themselves. . . ."

And in Insuranshares Corp. v. Penna. Securities Commission, 298 Pa. 263 (1929), the same interpretation was placed on the Act of 1927. The court said, at page 264:

". . . the act is intended to regulate the registration of stock and bond dealers and salesmen rather than the issuance of securities and 'does not contemplate the approval by the commission of the business expediency of the plan of financing a corporation whose securities are to be offered for sale by the dealer . . . . [but] an investigation to determine whether the securities are being offered to the public "honestly and in good faith" without an intent to deceive or defraud.'"

See, also, Crookston Safety Razor Co. v. Penna. Securities Commission, 34 Dauph. Co. Reps. 176 (1931), and Meteor Crater Exploration and Mining Co. v. Cameron, Commissioner of Banking, 29 Dauph. Co. Reps. 248 (1926).

### I. Dealers and securities

The term "dealer" is defined in section two (c) as follows:

"(c) The term 'dealer' shall include every person or entity, other than a salesman who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or inquiries about, or dealing in, any manner in any security or securities within this State, including securities issued by such entity."

The section, however, enumerates fourteen transactions which are excepted from the above broad definition, and provides that "none of the . . . transactions [so enumerated] shall constitute the person or company engaging therein a 'dealer' . . ." For example, subparagraph five of this section exempts from registration, among others, any company which issues securities and sells the issue to a registered dealer. Subparagraph eight, as amended by the Act of May 8, 1929, P. L. 1659, exempts any company organized under the laws of this state, or of a foreign state and having fifty per cent. of its capital invested in this state, which in good faith disposes of its own securities for its own account without any commission and at a total expense of not more than three per cent. of the proceeds realized thereon, and where no part of the issue is used in payment for patents, services, good-will, or for property located outside of this state. Subparagraph nine exempts from registration any Pennsylvania corporation engaged in the sale of its own securities, where its capital stock, added to its other outstanding securities, does not exceed $25,000, and where the securities are issued and disposed of in good faith for the sole account of the corporation. Subparagraph ten exempts Pennsylvania corporations in the original issuance and sale of their own securities, in cases where the total number of stockholders does not exceed twenty-five, and where there are no advertisements, agents or public solicitation. The other subparagraphs enumerate transactions which may be carried on without registration. For the purpose of this opinion it is not necessary to review each of the exceptions contained in these subparagraphs. It is sufficient to point out that there is no exception applicable to public service companies as distinguished from other companies, and that the above-quoted definition of the term "dealer," and the fourteen exceptions

thereto, apply to public service companies to the same extent that they apply to other individuals and entities.

It is important to bear in mind that under the express terms of the above-quoted definition, an entity offering its own securities is a dealer. Hence, all such entities require registration unless their transactions are within one or more of the exceptions specified in the act.

The applicant for registration as a dealer must, under the provisions of section seven, satisfy the commission that the applicant is of good repute and that its plan of business is fair, just and equitable in that there is no fraud in connection with the proposed offering of securities to the public. In the sale of their securities, or to the extent that they are dealing in any manner in securities, public service companies are subject to the jurisdiction of the Securities Commission as are all other companies. When they operate as dealers within the meaning of section two (c) they are required to be registered, and must, therefore, satisfy the commission as to their good repute and that their securities are being offered honestly.

It should be noted that the term "company," as used in the Securities Act, is very broad in its meaning, and as defined in section two (b), includes "a corporation, part-stock company, partnership, association, company, syndicate, trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this State, or any other State or Territory of the United States, or any foreign state or country."

Under the provisions of section fifteen, the commission has authority to regulate the securities themselves to the extent that they have been, or are being sold fraudulently by dealers. That section provides:

"Section 15. The commission may at any time require a dealer to file with it a list of securities which, within this State, he has offered for sale or has advertised within the preceding six months, or which he is at the time offering for sale or advertising, or any portion thereof, and thereupon, if it shall appear that any of such offerings of the dealer have not been made honestly and in good faith, but have been made with intent to deceive or defraud, it may prohibit the dealer from selling or offering such securities as have been so sold or offered or from in any way advertising them within this State."

This section gives the commission full authority to investigate the manner in which securities are being, or within the past six months have been, offered to the public by dealers. As we have pointed out, public service companies are subject to the same regulation as other dealers, and if there is any fraud or lack of good faith in the offering of securities of such companies, the commission may prohibit their sale within this state.

## II. Salesmen

The term "salesman" is defined by section two (d) of the act. It is as follows:

"(d) The term 'salesmen' shall, except as provided in section four, include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities within this State, whether by direct act or through subagents."

Salesmen are registered by the commission in accordance with the provisions of section ten of the act upon application of registered dealers and upon satisfactory evidence being submitted to the commission as to the good repute, fitness and qualifications of such salesmen.

Section four is the only part of the Securities Act which refers in any way to public service companies as distinguished from any other individuals or

446

entities; it contains an exception relating specifically to salesmen who are employes of public service companies subject to The Public Service Company Law of Pennsylvania of July 26, 1913, P. L. 1374. This section provides:

"Section 4. The employes of a company subject to the provisions of the Public Service Company Law of Pennsylvania shall not, for the purpose of registration, be considered as salesmen or agents within the meaning of this act, and shall not be required, as to securities issued by such company, or as to securities issued by a company subject to regulation by the Interstate Commerce Commission, which latter company controls directly or otherwise such other company, to procure registry certificates to enable such employes, acting for either of such companies and no other, or for a securities company owned or controlled by either of them and engaged in promoting the distribution of such securities as incidental to their regular employment, to sell or solicit or negotiate for the sale or purchase of such securities in the territory served by the company by which they are employed. Such employes shall however be subject to the other provisions of this act to the same extent as though in fact registered as an agent or salesman thereunder.

"If the commission has reason to believe that any such employe has in any way violated, or is violating, or is about to violate, any of the provisions of this act, or has reason to believe that such employe has been guilty of any fraud or fraudulent practice, it may order such employe to cease and desist from the further sale of such securities. Such order shall be made after notice and hearing, and shall be subject to appeal as is herein provided for in the case of a revocation of an agent's or salesman's registration."

In effect, the above section provides that the employes of a public service company operating in Pennsylvania shall not for the purpose of registration be considered as salesmen or agents when they are selling the securities of that company, when they are selling the securities of a holding company regulated by the Interstate Commerce Commission, which controls the first mentioned company, or when they are acting for a security company owned or controlled by either of the two previously named types of companies and engaged in the distribution of their securities. However, these exemptions apply only so long as the employes sell, solicit or negotiate for the sale of such securities in the territory served by the public service company by which they are employed and as part of their regular employment.

It is especially to be noted that the statutory provisions we have just discussed exempt employes of public service companies only from registration. In every other respect any such employe who is engaged in disposing of securities of his company is subject to the same restrictions and penalties, and the same supervisory power of the Securities Commission as a registered salesman.

To summarize, the Securities Act applies to and affects public service companies and the sale of their securities to the same extent that it applies to other entities and individuals in the sale of securities. The Securities Commission has no authority to regulate the issuance of securities. However, it may investigate any such issue in the hands of dealers, to determine whether fraud has been or is being practiced in the offering and sale of the issue to the public. If such fraud is found, the commission may forbid any further offerings or sales of the securities by the dealers.

Employes of public service companies, when selling securities of their employers, under certain conditions, need not register as salesmen under the act. However, such salesmen are in all other respects subject to the same restrictions and penalties and the same supervisory power of the commission as registered salesmen.