## Hose v. Pennsylvania Securities Commission

*Snyder, Miller, Hull & Hull,* for appellant.

*W. H. Neely,* Special Deputy Attorney General, for appellee.

WICKERSHAM, J., December 11, 1933.—The appellant in this case made application to the Pennsylvania Securities Commission for registration as a dealer under the Securities Act of April 13, 1927, P. L. 273.

In answer to the fifteenth interrogatory contained in his application, the appellant stated:

"I purchase directly deeded producing oil royalties, taking title to same in my own name, in large quantities, then divide same into fractional parts which are sold and conveyed by recorded deeds to the public through personal soliciting only on the part of my agents and salesmen. I expect to maintain about 15 salesmen in Pennsylvania. No general advertising or correspondence campaign is contemplated. All transactions are made between T. S. Hose, as principal, through my own salesmen, direct to the purchaser.

"The purchasers receive checks direct from either the pipe line company or the company operating the lease about the 15th of each month for their portion of the oil taken out the previous month."

To section (c) of paragraph 16, the appellant states, in answer to the question, "for what purpose is additional capital to be used":

"No additional capital is being solicited. The producing oil royalties offered are owned by me personally and offered for sale, the proceeds from such sales being used to purchase additional royalties."

In answer to the fifth interrogatory, on the last page of his application, the appellant states:

"Due to the nature of my business, that is directly deeding fractions of producing oil royalties, and inasmuch as many States in which I am doing business consider directly deeded producing oil royalties as real estate and not as securities, I have not been asked to qualify under the securities act of any State other than Pennsylvania. . . ."

The appellant also gives the names of the States in which he is doing business.

In the record, we find as an exhibit the form of deed used by the appellant in conveying to the purchaser the interest which the purchaser proposes to purchase. The record also contains a copy of the deeds by which the owners of the royalty in oil-producing land conveyed certain portions of said royalty to the appellant.

While applying to the Pennsylvania Securities Commission for registration as a dealer, the appellant insisted that what he was selling and conveying to the purchasing public was an interest in real estate and not a security, as defined in the Pennsylvania Securities Act of 1927. He alleges his only purpose in applying for registration as a dealer, if that is permissible under said Securities Act, was and is to comply with the laws of Pennsylvania; but he insisted, however, that he is not a dealer in securities as contemplated in the said act, and was not required to be so registered as a dealer. His attorney states:

"I wish to repeat that Mr. Hose wants to comply, if possible, with the wishes of the Securities Commission and if possible receive a permit at your hands, so he will be subject to, I may say, the general supervision of this commission while he does business in this State. The purpose of this is, in the event of an adverse decision—I want to be perfectly frank with the commission; I want our position to be fully understood by the commission, as in that event I would instruct him to proceed under the real estate law of the State of Pennsylvania.

"Mr. Asnis: Your point, therefore, is that your client and his plan of business as submitted in his application to this commission does not come within the jurisdiction of the commission under the Securities Act?

"Mr. Staggers: That is my position.

"Mr. Magee: You would waive the legal point if we would license your client?

"Mr. Staggers: That's it.

"Mr. Asnis: And if we did not license you, you would protest the decision?

"Mr. Staggers: I would certainly have to do that. I would protest that the real estate law would protect him in the sale of oil royalties."

After hearing, the Pennsylvania Securities Commission filed a decree and order in which it refused to register the appellant as a dealer in securities. The present appeal to this court followed.

The petition for appeal objects to the findings of fact and conclusions of law contained in the order and decree of the Securities Commission, to which the defendant filed an answer.

It is contended by the plaintiff that oil-producing royalties are not securities within the meaning of the Securities Act. We think this contention raises an interesting question of law, the decision of which is, in our opinion, the turning point in this appeal.

## Discussion

It is the contention of the defendant that the interest in royalties which the appellant proposes to sell is a security as contemplated by paragraph (a) of section 2 of the act which provides:

"The terms 'security' or 'securities' shall include . . . oil, gas or mining lease or certificate of any interest in or under the same. . . ."

This contention is controverted by the appellant, who relies upon decisions of the Supreme Court of the United States and the Court of Civil Appeals of Texas, from which we quote.

In Waggoner Estate et al. v. Witchita County et al., 273 U. S. 113, it was held:

Whether the interest of a lessor in an oil lease upon a royalty basis is realty or personalty is a question of local law, upon which local decisions and statutes control in the Federal courts.

This was an appeal from a decree of the Circuit Court of Appeals for the Fifth Circuit, affirming a decree of the District Court for the Northern District of Texas dismissing a bill filed to enjoin the collection of a tax.

This subject was before the Court of Civil Appeals of Texas in the case of Taylor et al. v. Higgins Oil & Fuel Co. et al., 2 S. W. (2d) 288, in which it was held:

"Oil is part of land and can be sold in place, so that ordinary form of oil lease is, in effect, sale of portion of land."

Writing the opinion of the court it was said by Walker, J. (p. 295):

". . . It is also the law of this state that the royalty interest retained by the lessor under such leases, whether owned by the original lessor or his vendees, is an estate in the land to be held and sold only under the laws regulating the sale of land [citing cases]. . . .

" 'The effect of the leases executed by appellants to the lessees in this case was to sever said minerals in or under said land from the remainder of the land, and to, in substance, vest in said lessees seven-eighths of said minerals, and, in effect, leaving in appellants, severed from the remainder of the land and subject to sale and separate taxation, one-eighth or royalty interest in said minerals, to be delivered when mined and brought to the surface' ": Ferguson v. Steen, 293 S. W. 320.

Quoting further from the opinion of Judge Walker, found at page 294:

"Without quoting from the Higgins lease and the Houston Production Company lease, it is sufficient to say that they constituted a conveyance of the realty, and the estate created by them and conveyed by H. Taylor to his lessees was an estate in realty. . . ."

We quote from a statement of Mr. Staggers, attorney for appellant, made to

the commission, which we think is a fair discussion of the facts and legal principles involved:

"The landowner released seven eighths of his oil and gas interests and granted to the operating oil company all the rights to drill for oil or gas and reserved to himself one eighth of the gross production in all oil produced from the property. The contract or lease is in force and effect for a specified number of years. Commercial leases usually run from 3 to 5 years and provide for the drilling of a well on the property to a specified depth for oil and gas within a certain time limit set out in the contract. After oil or gas has been produced in paying quantities on the property, the operating company's rights then become perpetual and all acreage rentals cease, as the company then takes seven eighths of the oil, and one eighth of all oil received from the property must be delivered, free and clear of all obligations, to the landowner, and this continues so long as oil or gas is produced from the property. It follows, therefore, that every barrel of oil taken from the ground by the operating company has a double ownership, seven eighths belonging to the operating company and one eighth to the landowner. The oil company leasing the property agrees, in its contract, to pay the entire cost of drilling, equipping, and marketing of all oil produced from the land and to deliver an amount in cash equal to one eighth of the gross oil produced from the property to the land or royalty owner. If the landowner wishes to dispose of his one-eighth oil interest, or any part thereof, he may do so the same as he would dispose of any other real estate owned by him, and to convey title to the one-eighth royalty or any interest therein he must either transfer it by a legal document known as an assignment, which must be subscribed and sworn to before a notary and recorded in the county recorder's office in which the land is located, or he may convey the one-eighth royalty or any interest therein by what is known and described as a mineral deed, which is recorded in the county recorder's office the same as any other warranty deed used in the transfer of any other real estate he may own. When a sale and transfer has been made, either by assignment or mineral deed, and properly recorded, the purchaser is then in the same relative position as the original landowner and is entitled to all the rights and income provided for in the instrument of sale and conveyance."

This was the procedure followed in the instant case. As we have stated, the form of deed of conveyance for whatever interest the purchaser may desire in the royalty is to be signed and acknowledged by the owner, the appellant in this case, and must be recorded in the county in which the land is located.

It appears from the record that the appellant was proceeding and proposes to proceed under the law of the State of Texas, as indicated in the opinion of Judge Walker in the case of Taylor et al. v. Higgins Oil & Fuel Co. et al., supra, from which we have quoted.

The severance of the surface of land from mineral, oil, or gas interests thereunder is not unknown in Pennsylvania: Strunk et al. v. Morris Run Coal Mining Co., 271 Pa. 148. Minerals have long been the subject of transfer and sale as a separate estate apart from the surface: Webber v. Vogel, 189 Pa. 156.

We think, therefore, that what the appellant proposes to sell in Pennsylvania constitutes an interest in the oil or gas royalty which the appellant owns, and is real property and not a security. We are of opinion that the two Texas decisions from which we have quoted are controlling upon this court, and that the appellant was not bound to present his application for registration in Pennsylvania as a dealer in oil royalties in the State of Texas. We are further of the opinion that the appellant did not waive the legal questions raised before the commission by submitting himself to its jurisdiction for the pur-

poses stated in the evidence at the hearing. What he desired was to obtain a certificate as a dealer in the sale in Pennsylvania of oil royalties purchased and owned by him in the State of Texas, if the commission was of opinion that he was entitled to be so registered. But it does not appear in the record at any place that he waived any of his legal rights, as was clearly stated by his counsel, Mr. Staggers, at the hearing.

Referring now to the contention of the defendant, the Pennsylvania Securities Commission reaches the conclusion that a producing oil royalty is a "certificate of interest in or under the same [oil lease]" within the meaning of the Securities Act, where the owner provides that one eighth of the gross production of oil or gas shall be reserved to the owner or lessor. It must be apparent, in view of what we have said, that the one eighth which the owner reserves never passes to the lessee. It remains in the owner. The seven eighths passes to the lessee. The lessee may certify to the interest of the lessee, but the interest of the lessor is certified in his deed and to that he looks for his title. The owner had the entire title by virtue of the deed to him. The lease is executed between the owner and the operator. By the lease, he gives the operator the right to explore, drill and produce oil or gas from the property, and title to seven eighths of the oil and gas passes to the operator, but title to the other one eighth has never passed; it is reserved to the owner. We are of opinion, therefore, that the one eighth reserved by the owner certainly cannot be an oil, gas, or mining lease. Neither can it be a certificate of any interest in or under the same, for the reason that the royalty is not dependent upon the lease. The royalty depends upon the owner's deed and is what he has not parted with by virtue of the lease. We therefore cannot approve the conclusion reached by the commission:

"The mineral deed merely conveys whatever rights the lessor enjoys as defined under the terms of said lease. Any deed, in a sense, is a certificate of interest inasmuch as it certifies to the holder's ownership of the property described in the deed,"

for the reason that the mineral deed given by the lessor does not convey anything other than that which has always remained in the lessor. The fact that the lease may designate that for which the lessee is liable to the lessor does not make the lessor's right an interest under the lease since, regardless of the lease, his title depends on his deed. Moreover it would be an anomalous situation if a Pennsylvania court held that the thing that appellant was selling was personal property, while the court of Texas, the situs of the thing he proposes to sell, holds that it is real estate.

We conclude, therefore, that the commission erred in holding that the producing oil royalty is a security within the meaning of the Securities Act. In view of what we have stated above, we think we cannot follow the decisions of the California courts referred to by counsel for the defendant. While the opinions of the attorneys general of several of the States are persuasive, we find no opinion of the Attorney General of Texas upon the subject, and we must follow the decisions of the Texas courts rather than those of the attorneys general or courts of other jurisdictions.

Having disposed of the legal question raised, and being of opinion that the appellant is not required to have the certificate of the Pennsylvania Securities Commission prior to making sales, we will next consider the other questions raised in this appeal.

The second exception of the appellant is that the evidence before the Securities Commission does not support its conclusion, to wit:

"1. That the profits derived by the applicant from the sale of oil royalties

are so gross and exorbitant as to be deemed unconscionable and fradulent within the meaning of section 2(f) of the Securities Act."

It appears from the brief of the Deputy Attorney General that the commission's conclusion, as above stated, is based upon the testimony found in the record. However, upon examination of the record we find that the sales about which complaint is made by the commission were for nonproducing oil properties. There is a clear distinction between "producing oil royalties" and "nonproducing oil royalties". A "producing oil royalty" is a royalty upon which oil is actually being produced, whereas, "nonproducing oil royalty" is a royalty which is not producing oil. The latter is more or less speculative. The appellant proposes to sell in Pennsylvania only oil-producing royalties. Commenting upon this distinction, the commission, in its report, states:

"The above-mentioned exhibit shows that the average profit on royalties which were producing at the time they were purchased and sold as producing royalties amounted to 5 percent, in addition to which the applicant was obliged to pay a commission to various dealers amounting to 15 percent, as above mentioned. The commission does not feel that the 5 percent profit to the applicant or the 15 percent fee payable to dealers is so exorbitant as to be unconscionable."

We think, therefore, that conclusion no. 1 is not sustained by the evidence.

The third objection on the part of the appellant to the finding of the Securities Commission in its conclusion no. 2, which reads: "2. That the applicant's plan of business is unfair, unjust, and inequitable, in that the circular which he proposes to use in connection with the sale of oil royalties does not disclose to the public information concerning the payment of commissions on the sale of such royalties to dealers", cannot, we think, be sustained. The Securities Commission very frankly states that the appellant was not obligated to state particularly the amount of commissions that he pays. Certainly, the only purpose of the act is to provide for an investigation to determine whether the securities are being offered to the public honestly and in good faith, without intent to deceive or defraud, and the act does not contemplate approval by the commission of the business expediency of the plan of financing adopted by the appellant: N. R. Bagley Co., Inc., v. Cameron, 282 Pa. 84; Insuranshares Corp. v. Pennsylvania Securities Commission, 298 Pa. 263. In another part of the report of the Securities Commission, the commissions charged by the appellant were held not to be unreasonable. The amount of profit which he receives is not a matter of inquiry on the part of the Securities Commission. Omitting from the circular a statement that from the purchase price a part goes for commission cannot be misleading and justify the second conclusion reached by the commission.

The fourth exception on the part of the appellant contends that the evidence before the commission does not support conclusion no. 3, which is as follows:

"3. That the applicant has otherwise failed to satisfy the commission that his plan of business is fair, just, and equitable, in that he has neglected and refused to submit to the commission information concerning the individual purchases and sales of oil royalties, although requested so to do."

A reference to the testimony shows that the information requested by the commission was with regard to sales not made by Mr. Hose to the public, were not such as proposed to be sold as a dealer, and could throw no light on the plan of doing business of selling producing oil royalties for which the license was sought. The record is clear that the return to Mr. Hose and the commission to the salesmen in connection with the sale of producing oil royalties is a fixed amount, and this the commission has found is not unconscionable.

Referring again to the record, we quote from the testimony:

"Mr. Magee: Those items read out a while ago at an enormous profit were not sold to the public?

"Mr. Hose: No.

"Q. Would it be sufficient if those items were shown which were sold to the public?

"Mr. Hose: That would eliminate the long explanations about the items sold in bulk."

We have already pointed out that the purchase and sale of nonproducing oil royalties is purely speculative. If the royalties purchased as nonproducing afterward become producing oil royalties, certainly they could be sold at a higher price than that paid by the purchaser in the first instance. The failure to submit what was requested was justified because Mr. Hose testified he could not furnish it, and since it is not involved in the matter of the application we think it does not constitute a basis for the third conclusion on which the refusal is based. We think the finding of the commission in this respect cannot be sustained and is not supported by the evidence.

The fifth exception of the appellant is that the evidence does not support conclusion no. 4 of the commission, which reads as follows:

"4. That the applicant is of ill repute, within the meaning of the Securities Act."

This conclusion is supported, the commission contends, by the refusal of the commission, some years ago, to approve the application of Staggers Oil Company as a dealer in securities. We are clearly of opinion that the admission of this evidence was error. The appellant was not one of the promoters of that oil company. He did some engineering work for it, and while he is named in its set-up as sales manager he testified that he did not know he had that title. We quote from the record:

"Q. What office did you occupy?

"A. I did engineering work for them and when I had the opportunity I interested people in the securities.

"Q. You were sales manager?

"A. I did not know I had that title.

"Q. If you will look at this application, you will see you were honored with that title. Are you that T. S. Hose?

"A. I am, but I never knew I was sales manager."

Referring again to the record, the appellant has submitted 12 letters certifying to his business standing, honesty, and integrity. Certainly he is not to be held a man of ill repute because his name was attached, without his knowledge, to an application of Staggers Oil Company which was refused August 13, 1929, more than 4 years ago. The offer of the record in the Staggers Oil Company application introduces into the application in the instant case an issue which the commission was not trying. The appellant was not a party to it with his knowledge and consent, and therefore we are clearly of opinion that nothing can be predicated upon this evidence and it should not have been offered as part of the record in this case.

For the reasons herein given, the conclusions and order of the Pennsylvania Securities Commission are not supported by the law or the evidence, and the appeal must be sustained.

And now, December 11, 1933, the appeal of the plaintiff is sustained, the costs of the proceeding to be paid by the defendant.

From Homer L. Kreider, Harrisburg, Pa.