POTTSVILLE BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (SCHUYLKILL BROADCASTING CO., Intervener).

No. 7016.

United States Court of Appeals for the District of Columbia.
Argued March 7, 1938.
Decided May 9, 1938.

Eliot C. Lovett and Charles D. Drayton, both of Washington, D. C., for appellant.

Hampson Gary, Gen. Counsel, George B. Porter, Asst. Gen. Counsel, Fanney Neyman, Asst. Counsel, and Frank U. Fletcher, all of Washington, D. C., for Federal Communications Commission.

Arthur W. Scharfeld, Philip G. Loucks, and Joseph F. Zias, all of Washington, D. C., for Schuylkill Broadcasting Company.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

This is an appeal from the Federal Communications Commission.

The Pottsville Broadcasting Company, a newly organized Maryland corporation, applied to the Commission in May 1936 for a permit to construct a local daytime broadcasting station in Pottsville, Pennsylvania. Charles D. Drayton, a lawyer·in Washington city, is president of the company. The other officers and directors are residents of Pottsville. Prior to the application the company organized and received subscriptions at $10 each for 2625 shares of its capital stock. Drayton subscribed to 2550 shares in the amount of $25,500. The remaining shares were distributed among the other officers and directors. There is no question as to the financial ability of all to comply with their several obligations.

The application was submitted by the Commission in the usual course to one of its examiners, who in November 1936 recommended that the application be granted. The examiner's findings of fact were that the corporation was in all respects financially qualified to operate the proposed station; that there was need of a local daytime station at Pottsville; that its establishment would not result in objectionable interference; and that the program of entertainment, etc., appeared to be wholly satisfactory.

Some five months later, the Commission overruled the examiner's recommendation. The Commission found that there was need of a local station in Pottsville, sufficient financial patronage reasonably to assure its success, and sufficient local talent to support its service. But the Commission said it appeared from Drayton's testimony before the examiner that the payment of the corporate stock subscriptions was contingent upon the obtaining of an order of the Pennsylvania Securities Commission authorizing the issuance of the stock, and the Commission held that this contingency defeated any finding of financial ability in the applicant. In addition to this. ground for denial of the license, the Commission said that the principal stockholder, Drayton, was not a resident of Pottsville, "had no definite plans for residing in that town, or spending a percentage of his time therein" and was not familiar with the needs of the listening audience in that region. The Commission also observed that the record established that "Drayton's interest in the proposed station was primarily for investment purposes".

The applicant appealed to this court under the provisions of section 402(b)(1) of the Act, 47 U.S.C.A. § 402(b)(1). The appeal is based on the alleged error of the Commission in assuming as a matter of law that the consent of the Pennsylvania Commission was essential to the validity of the proposed stock issue, and likewise on the alleged error of the Commission in holding that an applicant for a local station must be a resident of the community intended to be served and must be personally familiar with the local needs.

The Commission answers the first point with the statement that the finding as to the financial status of the company was based upon the testimony of Mr. Drayton himself and that the Commission was justified in accepting it as correct. The testimony of Drayton to which the Commission refers is: "My own subscription consists of 2,550 shares at the total amount of $25,-500. This amount will be paid in immediately, if, and when, the present application is granted and the requisite order secured from the Pennsylvania Securities Commission. A similar situation exists as to the other subscribers". But as to this Drayton now says he was mistaken in his assumption that the subscription was not binding without the approval of the Pennsylvania Securities Commission and insists the Com-

mission ought to have examined for itself the laws of Pennsylvania before making its conclusion based on such laws.

 We have said on the subject that the applicant for a station permit assumes the responsibility of showing proper financial responsibility in order that the Commission may determine whether the grant of the license would be in the public interest, and we have no intention of modifying our position. But in the case now under consideration the evidence shows that the corporation was organized in Maryland and subscriptions to its stock in excess of its financial requirements for construction of the station were duly made. Undoubtedly those subscriptions were binding and lawful. Except, therefore, for the incorrect supposition of Drayton that the consent of the Pennsylvania Commission was a condition precedent to the issuance and payment of the stock, it is obvious that the Commission would not have grounded its refusal to make the grant on the basis of financial inability. We say incorrect supposition because it is undoubtedly true, as the Commission in effect now concedes, that the validity of the stock subscriptions was in no respect dependent upon any action by the Pennsylvania Commission. In this view, it is obvious that there was a mutual mistake, but one as to which the applicant no less than the Commission acted wholly in good faith. The Pennsylvania Act is intended to regulate the registration of stock and bond dealers and salesmen, and not to regulate the issuance of stock in circumstances like those present here. This clearly appears from the Act itself as well as from its interpretation by the Supreme Court of Pennsylvania. Insuranshares Corporation v. Pennsylvania Securities Commission, 298 Pa. 263, 148 A. 107; Commonwealth v. Pastor, 289 Pa. 22, 136 A. 862; Bagley Co. v. Cameron, 282 Pa. 84, 127 A. 311. It may be, as the Commission insists, that there is no obligation on it to enter into an independent investigation of the requirements of the Pennsylvania Securities Act, 70 P.S.Pa. § 1 et seq., or to take notice of the statutes of one of the States and hence that the Commission is entitled to accept as true the evidence of the chief officer of the applicant in this respect; but we need not consider that question. If, as we think, both Mr. Drayton in his testimony and the Commission in its finding based on his testimony were in error, it would be a silly business to perpetuate the error and permit it to destroy the rights of the applicant in the instant controversy.

In that view, we are led to consider the other ground on which the Commission based its denial of the permit. This is, as we have seen, that Drayton is not a resident of Pottsville, is not familiar with its local broadcasting needs, and is interested in the proposed grant primarily for investment purposes. The Commission said: "It is the opinion of the Commission that those who will control the policies of proposed new 'local' broadcast stations should show themselves to be acquainted with the needs of the area proposed to be served and to be prepared to meet that need."

The evidence taken before the examiner shows that Drayton, who organized the corporation and subscribed for all but a nominal amount of the stock, was, until just prior to the organization of the applicant corporation, a stranger to Pottsville; that he determined to apply for a license to operate a broadcasting station there largely as a sound business investment; and that he associated with him and brought into the new corporation a number of the leading citizens of that town in order to effectuate his purpose. One of the directors is the manager of the largest department store in Pottsville. Another is associated with the technical staff of the Bell Telephone Company of Pennsylvania. All are men of prominence, standing, and character in the community. It is quite true that their interests for the time being are more or less nominal, but Drayton testified that in associating them with himself in the new enterprise he anticipated and hoped that their financial interest would increase with the station's growth and expansion. There is nothing in the record to suggest that they are mere dummy directors. Their own evidence indicates the contrary and at least for the period of their services as directors they would have the same individual responsibility as Drayton in the conduct of the corporation's business. They at least, if anybody, know the local requirements.

 This particular ground of refusal has never been presented to us before, but we know from the published reports of the Commission's decisions that on the question of the propriety of confining grants of a local nature to local people the Commission has not given any indication of the

adoption of a fixed and definite policy. If the contrary of this were true, we should be slow to say that the establishment of such a policy would be either arbitrary or capricious. But the policy should be applied with substantial uniformity, and the lack of that uniformity in the past convinces us that the Commission has not sought to lay down a hard and fast rule. As applied here, this ground of refusal was obviously secondary rather than primary. It perhaps would not have influenced the Commission to the point of denying the license, except for what the Commission viewed as the lack of financial ability on the part of the applicant. Considering the record as a whole, and in view of the obvious good faith of the applicant and the subscribers to its stock, of the conclusion of the Commission that the establishment of the station is desirable and in the public interest, and of the manifest error which the applicant led the Commission into making, we think the interests of justice require that the case be sent back to the Commission solely that it may reconsider it. If the Commission should be of opinion, upon reconsideration, that the application ought not to be granted because a stranger to Pottsville has the controlling financial interest in the applicant corporation, and should announce a policy with relation to the grant of local station licenses, confining them to local people, we should not suggest the substitution of another view. But in saying this we are not unmindful of the obvious fact that such a rule might seriously hamper the development of backward and outlying areas. We never have assumed, however, and do not intend now to assume, such supervisory control of questions of policy. We think it perfectly clear it is the intent of the statute that such matters should be left wholly in the hands of the Commission, and our remand in this case should be understood only as growing out of the feeling on our part that the controlling consideration in the Commission's disposition of this case was its erroneous view of the Pennsylvania law and that to perpetuate this error would be wrong.

The decision of the Commission is, therefore, reversed at appellant's cost and the case remanded for reconsideration in accordance with the views expressed herein.

Reversed and remanded.