## Pennsylvania Securities Commission v. Sheridan

438

*Charles M. Willits*, Special Deputy Attorney General, for Pennsylvania Securities Commission.

*William S. Bailey, John B. Pearson, Storey, Bailey & Rupp, Portser, Gregg & McConnell*, for appellant.

NEELY, J., July 20, 1953.—This is an appeal from an order of the Pennsylvania Securities Commission revoking appellant's registration as a dealer in securities. The appeal is prosecuted under the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1 et seq., as amended by the Act of September 28, 1951, P. L. 1561, 71 PS §1710.41-44, Pa. R. C. P., §§1-13. Appellant was registered as a dealer in securities with the commission in accordance with the Pennsylvania Securities Act of June 24, 1939, P. L. 748, as reënacted and amended by the Act of July 10, 1941, P. L. 317, 70 PS §31, et seq. He was registered to sell fractional interests in oil and gas leases. Appellant sold fractional working interests in units in a lease in Clinton County known as "Herbert Martin Well No. 1."

Section 2 of the Securities Act, 70 PS §32(*a*), defines the term "security" as including a "fractional undivided interest in oil, gas, or other mineral rights." See Commonwealth v. Yaste et al., 166 Pa. Superior Ct. 275 (1950). All of the agreements contained the following:

"It is further agreed that the said First Party [*appellant herein*] shall drill, or cause to be drilled one well for oil and gas on said leasehold estate without any further expense to said Second Party, to and into the horizon of what is commonly known as the Oriskany sand, unless oil and gas is found in paying quantities at a lesser depth." (Italics supplied.)

A number of the agreements also contained the additional provision:

"No additional money shall be requested to complete Well #1 to and through Oriskany sand." ·

Appellant sank the well to a depth of 7,830 feet and then abandoned the operation.

Expert testimony was taken before the commission as to the meaning of the term "Oriskany sand" and also the location of recoverable gas or oil. According to the testimony of Dr. Charles R. Fettke, an eminent geologist, the top layer of Oriskany sand in the area of this well is what is known as the "Ridgeley sandstone", and the bottom layer is the "Shriver chert". The chert is underlain by "Helderberg limestone". According to Dr. Fettke's testimony, "Oriskany sand" included both the Ridgeley sandstone and the Shriver chert. Chert is defined in the evidence as being ordinary flint.

The commission felt the important question was whether or not appellant, in order to comply with his contract, was bound to penetrate the Shriver chert to the underlying Helderberg limestone. The late Dr. S. H. Cathcart, the able and well known geologist, in a letter to the commission dated October 20, 1952, stated that "the Ridgeley sandstone . . ., so far as we know, has been the source of all of the gas found at Leidy Field." He pointed out that "this well is located some distance from Leidy Field; it is an exploration rather than an exploitation well."

Appellant had drilled through the Ridgeley sandstone into the Shriver chert, but did not penetrate the Shriver chert to the top of the Helderberg limestone. Sheridan testified that the term "Oriskany horizon" was different in its meaning from the term "Oriskany sand". He stated that "Oriskany horizon" included the sandstone and the chert, but that the term "Oriskany sand" referred to the sandstone and had the same meaning as Ridgeley sandstone. He contended, then,

that having gone through the sandstone and into the chert, he had complied with the terms of his contract. It is interesting that Dr. Cathcart in his letter of October 20th said:

"As the matter stands, both principals may be acting in good faith, insofar as their understanding of the contract is concerned."

The commission, taking into consideration the expert testimony, found that Sheridan had breached his contract in failing to penetrate the chert. The commission said that because he had not penetrated the chert, he had failed to drill through the Oriskany sand. The commission concluded, therefore, that because of this breach Sheridan had acted in bad faith and revoked his registration as a dealer.

Our Securities Act is a "Blue Sky Law" of the type known as a "Fraud Act", that is to say, it has for its purpose the protection of the investing public from fraud in the sale of securities. To accomplish this purpose, it registers the persons engaged in the sale of securities as dealers and salesmen. The law does not attempt in any way to regulate business. It is provided in section 15 of the Act of June 24, 1939, P. L. 748, 70 PS §45, that a dealer's registration may be revoked by the commission if such dealer: (1) "has become of bad repute"; (2) "his plan of business has become unfair, unjust or inequitable, or is being conducted in an unfair, unjust or inequitable manner"; (3) "has become of insufficient financial responsibility to deal with the public"; (4) "has in any way violated, or is violating, or is about to violate, any of the provisions of this act", or (5) "has been guilty of any fraud or fraudulent practice." The term "fraud" or "fraudulent practice", as defined in the act, includes any misrepresentation of an existing fact or any prediction or promise as to the future not made honestly and in good faith: section 2(i), 70 PS §32(i).

We have had three basic statutes regulating dealers and salesmen in the sale of securities. The first was the Act of June 14, 1923, P. L. 779, repealed by the Act of April 13, 1927, P. L. 273, which in turn was repealed by the Act of June 24, 1939, P. L. 748. Each of these statutes contains the provision that it is essential to the registration of a dealer that his plan of business be fair, just and equitable, and the meaning of the language "fair, just and equitable", as it relates to the plan of business, has been construed under each act.

In N. R. Bagley Co., Inc., v. Cameron, 282 Pa. 84 (1925), the Supreme Court sustained the decision of this court in refusing appellant's registration as a dealer on the ground that its proposed plan of business was unfair, unjust and inequitable, and stated that the purpose of the Act of 1923 was to provide for an investigation to determine whether securities were being offered to the public honestly and in good faith and without an intent to deceive or defraud.

In Insuranshares Corporation v. Pennsylvania Securities Commission, 298 Pa. 263 (1929), the matter came before this court under the Act of April 13, 1927, P. L. 273, on an appeal from an order of the Securities Commission refusing to register the applicant as a dealer in securities. As part of its plan of doing business, the applicant, an investing company, organized a management corporation. Sales were made through this management corporation and earnings were paid to the management corporation on a percentage basis as determined by management's proportionate ownership of shares sold to the public.

"The trust funds and securities were under the joint control and management of both corporations, the dominant idea, however, being that the management corporation shall bring expert skill to the enterprise in the purchase and sale of securities." (Pages

265-266 of the Supreme Court's opinion.) The commission disapproved of the method of operation and the amount of fees charged. This court reversed the order of the commission and the Supreme Court affirmed our ruling.

The Supreme Court there held that it was not the function of the commission to approve or disapprove the plan of business of the applicant in the sale of securities, but on the contrary its duty was to determine whether or not the securities were being offered to the public honestly and in good faith and without any intent to deceive or defraud. The court pointed out that the corporate structure under which the applicant there proposed to function and the fees paid to the management corporation were matters with which the commission was not concerned. On this point the court at page 266 said: *"With this the commission had nothing to do. It is not a regulator of business."* (Italics supplied.) See also the opinion of this court in Petition of Mutual Reserves Administrators, Inc., 47 Dauph. 274 (1939). It was held in Commonwealth v. Summons, 157 Pa. Superior Ct. 95 (1945) that the Act of 1939, as amended, also contemplates an investigation to determine whether securities are being offered to the public honestly and in good faith and without any intent to deceive or defraud.

The findings of fact and conclusions of law in the commission's adjudication do not indicate that the commission in the instant case based its decision either on the ground that appellant's plan of business in the sale of securities had become unfair, unjust or inequitable, or that appellant was guilty of fraud or fraudulent practice as that term is defined in the act. There are no findings of fact that relate to any of the reasons that must be assigned by the commission in support of the revocation of a dealer's registration under section 15 of the Act of June 24, 1939, P. L. 748.

As a finding of fact the commission stated that because he did not comply with the contract "Sheridan had exhibited bad faith which does not entitle him to be registered as a dealer in securities." And the commission's dispositive conclusion is that "Edward P. Sheridan has failed to exhibit the necessary good faith and fair dealing which a dealer should exhibit, and that his failure so to do was a violation of the Pennsylvania Securities Act and that his registration therefore should be revoked."

In order to justify the revocation of a dealer's license, there must be a definitive finding on the part of the commission bringing the dealer within the revocation language of section 15 of the act. What was the bad faith and what was the lack of fair dealing of which Sheridan was guilty, if any? The commission's adjudication indicates that its finding of bad faith is based upon breach of contract by Sheridan. This in itself would not justify revocation unless that breach of contract showed that the dealer engaged either in fraudulent practice by making misrepresentations or false promises, or in a plan of business in the sale of securities that was unfair, unjust or inequitable, or that his conduct had otherwise violated section 15 of the act. The commission did not find that this appellant had done any of these things. Breach of contract in itself is a violation of the Securities Act only where it is done in some fraudulent or dishonest manner.

The commission's adjudication makes breach of contract the sole ground for revoking appellant's registration. Such breach in itself without any finding as to the attendant circumstances is not sufficient to support an order of revocation under section 15 of the act, having in mind that the fundamental purpose of the act is to prevent fraud. Whether in drilling this well to a depth of 7,830 feet through the Ridgeley sandstone there was a substantial performance of Sheridan's

contract in the light of all the circumstances presents an interesting question. The interested parties in an appropriate case may have their rights determined on this point in another proceeding.

The drilling of this well to a depth of 7,830 feet concerns events that transpired subsequent to the sale of these units. There is nothing, in our judgment, to show that there was a lack of good faith in the sale of these units, or that Sheridan made any false promises when they were sold. Dr. Cathcart, in his letter of October 20, 1952, indicated that "sand" is a driller's term meaning "any stratum containing oil", and that in the Leidy region the term "Oriskany sand" is used to indicate Ridgeley sandstone, through which stratum the well was sunk.

The commission has filed an answer to the appeal, perhaps under the belief that the appeal was prosecuted under section 18 of the Securities Act of June 24, 1939, P. L. 748, 70 PS §48, which provides that appeals shall be prosecuted to this court by petition, to which the commission shall file an answer, and that the case shall thereupon be at issue in this court on these pleadings. It will be noted that the Amendment of September 28, 1951, P. L. 1561, to the Administrative Agency Law, section 7, supra, 71 PS §1710.51, provides that the Administrative Agency Law shall apply to appeals from the Pennsylvania Securities Commission. Appellant did not bring this case into court on a petition under the Securities Act, but did file his appeal and exceptions under the Administrative Agency Law and in accordance with Procedural Rules 3 and 4.

It is doubtful, then, whether we can consider the answer of the commission to appellant's exceptions as anything more than an argument. The commission in its answer says that the breach of Sheridan's contract amounted to fraudulent practice and was evidence of bad repute. We think the breach of contract in itself,

unattended by other circumstances tending to establish some dishonesty in the conduct of Sheridan, would not be sufficient to establish either fraudulent practice or bad repute.

The record is silent on any findings as to Sheridan's dishonest conduct. We have nothing more here than a single contract in which Sheridan placed one construction, and then after certain events transpired an eminent geologist placed a different construction. How can it be said, then, that Sheridan, in the light of the fact that he had penetrated to a depth of 7,830 feet, intended to perpetrate a fraud? If the commission felt that Sheridan's conduct was fraudulent, it should have made the necessary findings to support such a conclusion. The commission's only contention as to the existence of fraud in this case stems from the breach of contract, and we have already given our views that this breach in itself, even if it existed, does not establish a fraudulent design when the extent of Sheridan's performance is considered.

The commission should have made explicit findings if it proposed to base its action of revocation on fraud or bad repute so that those findings could have been reviewed by this court. Not having done so, its answer certainly cannot supply the deficiency in the commission's adjudication, particularly since the answer in this respect is without any essential factual averments.

Since the order of revocation is not based on section 15 of the act, and the commission's adjudication makes no finding that the securities were offered for sale dishonestly, and does not find that appellant's conduct was fraudulent or otherwise violative of the Act of 1939, and because the evidence would not, in our judgment, support any such finding, the commission's order of revocation must be reversed. Accordingly, we enter the following

*Order*

And now, July 20, 1953, it is ordered, adjudged and decreed that the order of the Pennsylvania Securities Commission revoking the registration of appellant as a dealer in securities be and the same hereby is reversed, and the commission is directed to restore appellant's registration as a dealer in securities.