Commonwealth *v.* Harrison, Appellant.

Commonwealth *v.* Mandel, Appellant.

Argued March 13, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. M. Oliver,* for appellants.

*Russell H. Adams,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY HIRT, J., October 12, 1939:

Foundation Realty Company, a Pennsylvania corporation, was engaged in the development and sale of a real estate subdivision in Baldwin Township, Allegheny County, known as Baldwin Manor. Myer Harrison was its president and Joseph Mandel its vicepresident. It is now in the hands of receivers for liquidation. These defendants were charged in separate indictments with violations of The Securities Act of April 13, 1927, P. L. 273, 70 P. S. 1, and were convicted and sentenced. The specific charges are that each of them sold or disposed of stock of this corporation without first having registered as a dealer in accordance with the provisions of Section 3 of that act. That section provides that no dealer nor salesman nor agent in behalf of any dealer shall "sell, offer for sale, tender for sale or delivery, or solicit subscriptions to or orders for, or dispose or undertake to dispose of, or invite offers for or inquiries about, any securities within this State," without first being registered as in this act provided. Neither of these defendants nor the corporation was registered with the Pennsylvania Securities Commission in accordance with the act.

Several methods were employed by these defendants in disposing of the stock of the corporation. In some

instances preferred and common stock were sold outright to a purchaser, or the preferred stock alone was sold with the common stock as a bonus. In others the transaction took the form of loans to the corporation. A subscriber, at the solicitation of defendants, made advancements to the corporation and received the note of the corporation for the amount advanced together with the corporation's agreement to invest the proceeds in real estate. In each instance one hundred shares of common stock was issued to the subscriber for each one thousand dollars loaned to the company, and the corporation agreed to pay its note given to the subscriber, from the net proceeds of the first sale of real estate made by it, the common stock to be retained by the subscriber in consideration of his supplying capital to the company. There was also a variation of this latter method. In some transactions subscribers gave notes to the corporation for the amount of their subscriptions and at the same time delivered securities to the company which in each instance exceeded in marketable value the amount of the subscriber's note. These securities were rehypothecated by the defendants with the consent of the subscriber with the understanding that the proceeds of loans raised on the collateral would pay the subscription and would be used by the corporation in the purchase, development, and sale of real estate.

Each of the defendants was convicted by the jury on counts in the indictment based on transactions falling within one of the above classes, and the testimony as to each count submitted to the jury is sufficient to support the charge that each of the defendants sold or disposed of stock of the corporation. The issuing of common stock to a subscriber in consideration of a loan of capital to the corporation is disposing of stock within the purview of the act.

The Commonwealth, on the trial of these cases, following the admission that defendants were not regis-

tered, proved that they sold or disposed of the stock, and then rested. In the act there are certain exceptions limiting the definition of a "dealer." In Section 2(C) the act provides: "The term 'dealer' shall include every person or entity, other than a salesman who engages in this State, either for all or part of his or its time, directly or through an agent, in selling ...... or under-taking to dispose of ...... or dealing in, any manner in any security or securities within this State, including securities issued by such entity." Then follows a provision that transactions of certain types shall not constitute the person a dealer within the meaning of this act, among them, "wherein the issuer, a company organized under the laws of this State, disposes of its own securities, in good faith and not for the purpose of avoiding the provisions of this act, for the sole account of the issuer, without any commission or fee, and at a total expense of not more than three per centum of the proceeds realized thereon, ...... "

When the Commonwealth rested after proving sales of securities by both defendants it was then incumbent upon them, since they admitted they were not registered, to prove that their acts in disposing of stock came within the exceptions and did not constitute them dealers under the definitions of the act. In a case of this nature the burden is never upon the Commonwealth to prove negatively that a defendant does not come within a proviso or an exception of a statute: 1 Wharton's Crim. Ev., sec. 202; *Com. v. Wenzel,* 24 Pa. Superior Ct. 467. To the same effect is *Com. v. Johnson,* 89 Pa. Superior Ct. 439, construing the predecessor of the act under consideration here; in that case the ruling "that if the defendant claimed exemption from prosecution under any other exception in the act the responsibility was upon him to bring himself within such exception," was approved.

If the defendants sold the stock of a corporation wholly for its benefit they are not dealers

within the contemplation of the above act: *Com. v. Pastor*, 289 Pa. 22, 136 A. 862. In meeting the burden upon them, defendants produced only the office manager, the wife of one of the defendants, who testified that the entire proceeds of all sales of these stocks went into the treasury of the corporation. The books of the company were available and the defendants were familiar with them, and yet no records were produced to corroborate the bald statements of their witness, and the jury by convicting the defendants indicated that they did not accept this testimony. This phase of the cases was adequately submitted to the jury by the court and there is sufficient evidence to sustain the verdicts of guilt on all counts in the indictments except the first count against defendant Harrison. That count of the indictment against defendant Harrison charges the sale of 4000 shares of stock of the company to Anna Hornick. It was admitted that this defendant made the sale and kept the proceeds but it was claimed that the stock was his and that this was but an isolated transaction coming within the exception of paragraph 3 of section 2(C) of the act which exempts transactions where securities are sold by the owner thereof for the owner's account, not in the course of repeated and successive transactions of like character. The trial judge charged, in effect, that unless the jury found that the proceeds of sale of this stock went into the treasury of the company, the defendant was guilty of the charge. This was error. This defendant was entitled to have submitted the question whether the sale was not an isolated transaction relieving him from liability. The 13th assignment must be sustained.

A number of other assignments of error relate to the refusal of the court to grant a continuance of the trial of the cases because of alleged prejudicial articles appearing in newspapers just before the cases were called for trial. "In such matters, the court below is in a

better position to determine whether the case should be postponed or a new trial granted, and the propriety of its action cannot, therefore, be questioned": *Com. v. Deni,* 317 Pa. 289, 176 A. 919. We are unable to find an abuse of discretion in this respect.

The following remark of the district attorney is the subject of another assignment: "the purpose of the act of assembly under which the defendants were being tried was to prevent people from being sold worthless stocks and to prevent people from being defrauded of their money." This is a correct statement. It was these practices which inspired the enactment of this legislation. "The underlying purpose present in all of them [statutes of like nature] is, in one way or another, to protect the investing public": *Bagley Co., Inc., v. Cameron,* 282 Pa. 84, 127 A. 311. This act involves "an investigation to determine whether the securities are being offered to the public honestly and in good faith without an intent to deceive or defraud": *Insuranshares Corp. v. Pa. Sec. Com.,* 298 Pa. 263, 148 A. 107.

In some of the transactions as above indicated, a subscriber delivered marketable securities in lieu of cash to defendants. They hypothecated them as collateral on their personal loans to pay the subscriptions to the corporation. The court charged the jury in effect that if the defendants did not turn over to the corporation the entire proceeds of these loans they must be regarded as dealers who were required to register under the act. There is no direct evidence on the subject though it was incumbent upon defendants to show what was raised on these securities for they were authorized in each instance to borrow only the amount of the subscription for the benefit of the corporation. If they failed to pay into the corporation the whole amount of the subscription, or if they borrowed more than the amount of the subscription and retained the difference, they were profiting by the transaction and must be regarded

as dealers. In the light of the circumstances the charge in this respect was justified. Though the subscriptions were made to the company by this method, yet it was the defendants and not the corporation who rehypothecated the securities to pay the subscriptions. Notwithstanding the securities were marketable, they were pledged not with banks but with an individual who held a second mortgage on the company's land. All of these securities were later sold by the pledgee in payment of the loans. The whole procedure raises more than a suspicion that these defendants profited as individuals, and in the absence of testimony on their behalf explaining these transactions to the satisfaction of the jury, bringing them within the exceptions of the act, the evidence as a whole is sufficient to support the convictions.

Admittedly the defendants were sentenced improperly. In each of these cases the verdict was a general one of guilty on an indictment containing a number of counts. The courts lumped the penalties of the separate counts and sentenced defendant Mandel to pay a fine of $2500 and to undergo imprisonment for eight years and defendant Harrison to pay a like fine with imprisonment for six years. Since the verdict was general and only one sentence was imposed, the maximum penalty under the law cannot exceed the maximum penalty which could be imposed under any of the counts: *Com. v. Clark,* 123 Pa. Superior Ct. 277 (295), 187 A. 237. The penalty in each of these cases, therefore, cannot exceed a fine of $5,000 and imprisonment for two years, the maximum penalty prescribed by the act for each violation.

The convictions in 202 April Term, 1939, are affirmed. The conviction in 203 April Term, 1939, is reversed as to the first count and affirmed as to each of the remaining counts, and it is ordered that appellants appear in the court below at such time as they may there be called and that they be sentenced anew according to law.