Commonwealth *v.* Kniel, Appellant.

·Argued April 20, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Maceo W. Hubbard,* with him *Raymond Pace Alexander,* for appellant.

*Thomas C. Gawthrop,* District Attorney, for appellee.

OPINION BY HIRT, J., September 30, 1942:

Defendant was convicted of fraudulent conversion and was sentenced. This appeal questions the sufficiency of the evidence and the charge of the court. Only a general exception was taken to the charge, raising the single issue of basic error. *Com. v. Scherer,* 266 Pa. 210, 109 A. 867.

Defendant, well qualified by education and experience, was first employed in 1937 by Warner Company, as a chemist, under an oral hiring from month to month. The plant was located at Cedar Hollow in Chester County. The company was a manufacturer of lime products, and a number of other chemists were similarly employed under the direction of James A. Murray, the chief chemist. For some time the company had been interested in developing a commercially profitable method for the separation of magnesia from lime in dolomite. It had accumulated some data as a result of former experiments and the development of a process was assigned to defendant. By October 25, 1939 he, in collaboration with Murray, had devised a method which gave assurance of success. On that date, for the better protection of the company in the enjoyment of the fruits of his experiments, defendant entered into a written contract with his employer by which he, in part, agreed: "That all inventions made or conceived by me, either solely or jointly with others, along the lines of the Corporation's work from the time of entering its employ until I leave, shall be the property of the Corporation; and that I will promptly disclose such inventions to such officials or representatives of the Corporation as may be designated by its Board of Directors; That, as and when requested, before or after leaving the employ of the Corporation, I will at its expense execute all applications, assignments and other

papers necessary to enable the Corporation to obtain full protection and title in and for all countries to such inventions, and agree that any such inventions shall remain the property of the Corporation, whether patented or not; That I will not file patent applications covering such inventions during or after my employment by said Corporation unless specifically arranged for with officials of said Corporation, as herein provided." The agreement recites: "I recognize that the making of improvements and inventions and transferring them to the Corporation is an important part of the work for which I and the other employees of said Corporation are employed, . . . . . . and agree to perform said duties fully in letter and in spirit."

Under the direction of Murray, the company had accumulated a large number of selected scientific articles in various pamphlets, magazines, bulletins of chemical societies, and the like, more or less relating to the subject of the problem assigned to defendant. Of more importance to the company, for they could not be replaced, were six bound notebooks which contained the first hand data developed by the experiments of the company's chemists, principally by the defendant. We need not go beyond defendant's testimony for an estimate as to the value of these original records. He said: "The formulas which we perfected in the Warner Company have not appeared in print in any periodical . . . . . . the process as such developed by us for the benefit of Warner Company naturally was important" and would be profitable to any other firm "if they obtained possession of it."

Murray was the sole custodian of all of these records. Their place was in the company's files in the laboratory although defendant was permitted to take any of them to his home for a limited time for study. Contrary to his instructions he set up filing cabinets in his lodgings and kept the company's records there including

the six notebooks. He also had taken a camera for making microphotographs.

On January 26, 1941 defendant notified Murray that he had accepted employment with another, unnamed, company in New Jersey. Two days later Murray asked him to return all of the notebooks, pamphlets, papers, data and property of the company which defendant had. Though defendant continued to work until February 8, he neither expressed a willingness to return his employer's property nor did he return any of it. After defendant severed his employment, Murray again on February 12, notified defendant to return the material. On his failure to do so, Murray, on the following day made an information against him upon which the warrant of arrest in this case was issued.

Defendant, at the trial, admitted possession of the property and made no claim of ownership or the right to any of it. The question on the trial was whether the conversion was fraudulent. Under the Penal Code of 1939, P. L. 872, §834, 18 PS 4834, to withhold the property of another, with an intention to defraud or deprive that other of the lawful use and benefit of the property and to convert or apply the same to defendant's own use or benefit as against the owner, is the essence of the offense.

Defendant attempted to explain his neglect to return the property on the ground that he was irritated at Murray's refusal to name him as the author of the formula in an application for a patent on the process. Originally there were applications for four patents. In one of them defendant was credited with authorship; in another, Murray, and in two of them they were named as joint authors. The claims were disallowed and on the advice of a patent attorney it was the intention of Murray to apply for a single patent without credit to defendant. Defendant's excuse was not ac-

cepted by the jury and there are circumstances which sustain the charge of a conversion for an unlawful use. Beginning in November 1940 defendant was in consultation with a patent attorney in Philadelphia looking toward an application for a patent *in his own name,* contrary to his agreement, for the process, with some distinguishing improvements and additions, which he had not communicated to his employer. Although asked for the terms of his contract with Warner Company, he did not supply this information to his attorney. On February 9, 1941, after severing his employment, he took the six bound notebooks of company data to Philadelphia and left them in the custody of his wife with instructions to surrender them to no one. He consulted his attorney in regard to his proposed patent application twice during the following four days. He then had his brief case with him filled with pamphlets and work sheets, the property of Warner Company. On returning to his rooming house in Phoenixville on February 13, he observed officers executing a search warrant. He retired from the scene without being observed and took the brief case, containing the company's property, to a gas station and left it with the attendant to prevent the officers from seizing it. It was observed there by another employee and was recovered by Warner Company. Police officers later went to the home of the wife in Philadelphia in an attempt to locate the notebooks. She had heard of her husband's arrest, whereupon she locked her apartment and went to the home of her sister, taking the books with her. When located there she turned the notebooks over to the police. None of the company's property was returned voluntarily. When arrested, defendant refused to tell where the notebooks could be found. These are not the acts of an innocent man. It was a reasonable inference for the jury that defendant in-

tended more than mere embarrassment to his former employer by retaining the property for a time and that by his conduct he meant to convert the company's formulas to his own use and advantage, with a fraudlent intent. The fact that he intended to make an application for a patent in his own name and that he quit his employment preparatory to making the application may properly have been considered significant by the jury. Though he said he had accepted a position with another company, that was not a fact. It is not an unreasonable inference that he believed that, notwithstanding his agreement, he could maintain title to a patent obtained by him after he left Warner Company's employ; especially since his invention involved improvements on the process of which that company had no knowledge. The instant case is readily distinguished from *Com. v. Wiener,* 340 Pa. 369, 17 A. 2d 357, relied upon by defendant, for there the charge of the court was inadequate and ownership of the property was in controversy; here it is not.

We are unable to find fundamental error in the charge of the court. On the contrary, the learned trial judge impartially and accurately reviewed the facts and, with much care, instructed the jury as to the elements of the offense to be found from the evidence, necessary to a conviction. The emphasis, time and again, in the charge, was upon the question whether the evidence justified a finding that the property was withheld with the intention to defraud. In one instance the court charged: "the most important element ...... to be established, ...... is ......: that the defendant fraudulently, that is, we say, wilfully and without regard to the right of the Warner Company, withheld and converted this property or any part of it to his own use and benefit with criminal intent to defraud the Warner Company or deprive the Warner Company of

its lawful use and benefit in the property." A formal and abstract definition of fraudulent conversion would have added nothing to the charge; the trial judge (as in *Com. v. Bruno*, 316 Pa. 394, 175 A. 518) did better by reviewing the testimony and applying the law to it. Moreover, if defendant considered it important he could have had additional instructions for the asking. At the conclusion of the charge the trial judge said: "Have you any suggestions?" Defendant's counsel replied: "I have not." A similar situation was presented in the Bruno case where it was held: "Where the court's charge substantially covers the points in dispute, and no further requests for charge are made by defendant's counsel, although opportunity for such is given, defendant cannot on appeal complain of the inadequacy of the charge without showing that the alleged omissions contributed to the jury's verdict to defendant's prejudice ...... Nothing of the kind appears here." Defendant, therefore, is not entitled to a new trial.

The judgment of sentence is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.

KELLER, P. J. and RHODES, J., dissent.