## Commonwealth *v.* Summons, Appellant.

96

Argued October 23, 1944.   Before KELLER, P. J.,
BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Walter E. Glass,* for appellant.

*Hardie Scott,* Special Deputy Attorney General with him *W. Stephens Mayer,* District Attorney, *Fred J. Fees,* Assistant District Attorney, and *James H. Duff,* Attorney General, for appellee.

OPINION BY HIRT, J., March 14, 1945:

Appellant was convicted of violations of The Pennsylvania Securities Act of June 24, 1939, P. L. 748, as re-enacted and amended July 10, 1941, P. L. 317, 70 PS §31, and was sentenced. The charges were that, without registering as a dealer with the Pennsylvania Securities Commission, he sold 22 shares of stock in Crown Crest Cemeteries, Inc. for $6,600 and six shares on each of two other occasions for $1,800, all between September 23, 1941 and January 1, 1942. Another count charged a similar sale of 10 shares of the same stock on January 23, 1942 for $3,000.

Section 2(f) of the act, in its applicable provision, defines a "dealer" as "any person other than a salesman who engages in this State, either for all or part of his time, directly or through an agent who is not registered hereunder as a dealer, in selling securities issued by another person": 70 PS §32. The sale of any security by an unregistered dealer is made a misdemeanor under §22, 70 PS §52. Appellant was not registered. On the

merits, he contends that he was not a *dealer* as defined
by the act because he was the owner of the stock which
he sold and that in making the sales he was within the
specific exception of §2(f)3 which provides: "Isolated
transactions in which securities are sold by the owner
thereof ...... such sales not being made in the course
of repeated and successive transactions of a like char-
acter ......" shall not "constitute the person engaging
therein a 'dealer' within the meaning of this act." He
also contends that his conviction violates the fourteenth
amendment of the United States Constitution and
Article 1 §9 of the Constitution of this state in that the
statute in question, particularly in the statement of the
above exception does not lay down a reasonably ascer-
tainable and definite standard of guilt.

This latter question (perhaps because it suggests only
one answer) has never been raised in an appellate court
of this state. We find no merit in it. The word "iso-
lated" is not a word of art or of technical meaning. In
common as well as universal usage it means *standing
alone, detached, separate.* It is the opposite or counter-
term—the antonym—of "repeated" or "successive".
Whether sales of stock by an owner are isolated or re-
peated and successive transactions indicating a course
of dealing must depend upon the facts of each case in
the light of the purpose of the act. We have no doubt
that the unscrupulous would like to have the limits of
"isolated transactions" defined and would welcome a
definite statement of how many fraudulent sales they
may make within a given time without risking the pen-
alty of the act. But the legislation was enacted not to
foster fraud but to prevent it. The ordinary person can
understand what he may do and what is forbidden by
its language. The act explicitly permits an owner to
make more than a single sale of his stock and he may
safely dispose of it piecemeal on occasion, for profit,
from convenience or other legitimate motive. But where
sales by an unregistered owner, though detached or sepa-

rate, recur within such reasonable time as to indicate an association of acts under one general purpose, such sales are not "isolated" but are within "the course of repeated and successive transactions" prohibited by the act.

The need for control of the sales of securities is indicated by the number of states which have enacted identical or similar legislation. And wherever the above constitutional question has been raised in a court of last resort the act has been sustained as sufficiently definite in the light of the evil against which it is directed. Illustrative cases are: *State v. Soeder* (Iowa) 249 N. W. 412; *State v. Swenson* (Minnesota) 215 N. W. 177; others are collected in Annotation, 87 A. L. R. 42. Cf. *Kneeland v. Emerton*, 280 Mass. 371, 183 N. E. 155, which, though a civil case, impressively discusses the question.

The sales charged in the indictment upon which appellant was convicted were the only ones made in Cambria County. But there were many other sales of stock made by him in Clearfield County, and evidence of these was admissible to rebut the inference that the transactions in question were isolated and to establish a course of dealing. *Com. ex rel. Ciampoli v. Heston*, 292 Pa. 501, 141 A. 287; *Com. v. Hamilton*, 148 Pa. Superior Ct. 169, 24 A. 2d 656. Crown Crest Cemeteries, Inc., is a Pennsylvania corporation with an authorized capital of 150 shares of $100 par value. Appellant testified that he received 65 shares in consideration of the conveyance of land to the corporation. He bought 27 additional shares, although his testimony to this effect is not wholly sustained by the corporate records. Under his own admissions he sold 109 shares—17 more than he claimed to have owned. But considering, as the jury were asked to assume, that appellant was the owner of all the stock which he sold, the sales were repeated and successive transactions within a course of dealing prohibited by the act. Between September 1939 and March 1942 he

made 23 sales to individuals for a total of $24,400. Twenty of these sales were made in the last fourteen months of the period. He sold to miners and farmers and others inexperienced in appraising securities and he realized an average return of about $285 per share for stock of $100 par value. Under the evidence exploitation of the capital stock of this company was appellant's business; he was a dealer and registration as such was required.

We may refer but briefly to the remaining questions raised.

The primary purpose of this legislation is to protect the investing public (*Com. v. Harrison*, 137 Pa. Superior Ct. 279, 8 A. 2d 733) and the act is valid under the police power. Cf. *Com. v. Zasloff*, 137 Pa. Superior Ct. 96, 8 A. 2d 801, affirmed in 338 Pa. 457, 13 A. 2d 67. In the exercise of the power limitations may be put on the unrestricted sale of securities. The act contemplates "an investigation to determine whether the securities are being offered to the public honestly and in good faith without any intent to deceive or defraud." *Insuranshares Corp. v. Pa. Sec. Com.*, 298 Pa. 263, 148 A. 107. Registration of an owner as a dealer who sells his stock bears a reasonable relation to the object in view. This is demonstrated in the present case. In the light of appellant's prior record of violations of law in Maryland (in the evidence bearing on his credibility) any application of appellant for registration as a dealer undoubtedly would have been refused.

The title to the act[1] is sufficient to put persons of reasonably inquiring mind on notice of its subject matter. This is the test. *Gumpert's Estate*, 343 Pa. 405, 23 A. 2d 479. Its declared purpose, (which must

---

[1] In part as follows: "An Act relating to and regulating the purchase and sale of securities; providing for the registration and regulation of certain individuals ...... selling ...... attempting or offering to dispose of, soliciting offers to buy, or inducing holders thereof to exchange, securities defined herein, ......"

be construed as limited to one subject under the principle of *Bridgeford v. Groh,* 102 Pa. Superior Ct. 138, 156 A. 612) is clearly expressed in its title. The title of the original Securities Act of June 14, 1923, P. L. 779 was upheld in *Bagley Co., Inc. v. Cameron,* 282 Pa. 84, 127 A. 311. The title of the 1941 act in its broader provisions puts an owner on notice of restrictions upon him in selling his own securities.

And finally, we find no fundamental error in the charge of the court. In response to an objection of appellant the trial judge repeated the instruction: "you may convict the defendant in this case for sales of his own stock if you find that the sales were not isolated, but part of a series of repeated and successive transactions of like character." The clear language of the act, creating the misdemeanor, is self defining and appellant made no request for more explicit instructions. In any view appellant may not now complain of inadequacy of definition of the offense, "without showing that the alleged omissions contributed to the jury's verdict to appellant's prejudice": *Com. v. Bruno,* 316 Pa. 394, 175 A. 518; *Com. v. Kniel,* 150 Pa. Superior Ct. 290, 28 A. 2d 326.

Judgment affirmed.