**Al. S. NELSON, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–12878.

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1960.

Howard, Carr, & Harris, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Robert Simms, County Atty., Tulsa, for defendant in error.

BRETT, Justice.

The plaintiff in error, Al. S. Nelson, as defendant below, was charged by information in the District Court of Tulsa County, Oklahoma, with the crime of selling 10 shares of unregistered stock in the Security Express Corporation for $200 to H. D. Chapman, in violation of the provisions of 71 O.S.A. §§ 301 to 305, under penalties provided therefor in section 407 of said act. He was tried by a jury, convicted, with his punishment left to the court, which fixed the the same at 2 years in the penitentiary and a fine of $500. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

71 O.S.A. § 301 reads as follows:

"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 401. Laws 1959, p. 334, § 301."

We have carefully examined sec. 401 of said act and the stock sold in the instant case does not fall within any of the

exemptions set forth therein. A brief summary of the exemptions will be hereinafter set forth in discussing a specific contention raised as to the burden of proof in regard to exemptions enumerated in the act.

Briefly, the proof of the state as testified to by Mr. Scott Burson, Assistant Secretary of State, established that the Security Express Corporation was an Oklahoma concern organized on April 20, 1958, as reflected by the articles of incorporation, and organized for the purpose, among others, of engaging in the money order business, and to deal in securities, stocks, savings certificates, etc.

The State's proof and the defendant's admissions on cross-examination established that this corporation was the defendant's idea; although he was not an officer or stockholder in the corporation, but that he did own some stock at one time. The evidence shows that in spite of the foregoing, Mr. Nelson was the actual chief operative of the concern, running and directing its operations; especially in the matter of collecting and depositing money due the corporation, and in checking on the company accounts. He ran the company without any official connection with the company. It definitely appears that although he tried to disassociate himself from the company, according to his testimony he was its main-spring of motivation.

The company was capitalized at $5,000 for issuance of 500 shares at $10 per share, and was authorized to begin business upon paid-up capital of $1,000. Immediately after incorporation Mr. Nelson began the sale of stock to the public.

The testimony of Mr. W. G. Chambers, authorized agent of the Oklahoma Securities Commission, established that none of this stock offered or sold to the public was ever registered and dealt with as provided in the Oklahoma Securities Act, 71 O.S.A. §§ 1 through 504 inclusive.

■ The record discloses that 20 shares of the corporate stock of Security Express Corporation was issued to and paid for in the sum of $200 by Mr. H. D. Chapman of Tulsa, Oklahoma. The evidence reveals that the sale was promoted and consummated by Al. S. Nelson. The defendant admitted that he sold this stock to Mr. Chapman and discussed its possibilities, and sold it also to other people, taking their checks in payment therefor. Defendant admitted that these persons included the original incorporators and others not so listed. This evidence was admissible against the contention made that this was an isolated sale. Commonwealth v. Summons, 157 Pa.Super. 95, 41 A.2d 697, as well as for the purpose of establishing a course of dealing.

■ The evidence in the foregoing regard is sufficient to establish the charge as laid in the information and to support the jury's verdict. It has been repeatedly held that the jury is the sole judge of the facts, and where there is any competent evidence reasonably tending to support the same, even though there is a sharp conflict in the evidence, the findings of the jury will not be disturbed. The trial court did not err in overruling the defendant's demurrer to the evidence for its alleged insufficiency.

■ The defendant contends that the trial court erred in permitting a certain stockbook to go into evidence in face of his objection that it was obtained by an unlawful search and seizure of private property. The stockbook does not appear in the record. Moreover, the objection to its introduction and the oral motion to suppress in no way advises whose private property was searched, nor in any way advises the court as to the basis of the contention of unlawful seizure. When the motion was made the trial court overruled the same. Moreover, when counsel for defendant stated that he wanted to offer proof on the same and was denied, he should have preserved the record by making a proffer of proof to advise the trial court as to what the evidence would disclose and as a basis for consideration on appeal. This he did not do, but stood on the objection and

motion to suppress, which is too general to establish the merits thereof, if any. Appellate courts are not required to engage in speculation and surmise in such matters. The rule is clearly stated in 24 C.J.S. Criminal Law § 1783, page 570 through note 3 on page 573.

"It is the duty of the appellate court to consider all questions apparent on the record, or reserved by bill of exceptions, and it is the duty of appellant to present a correct record which shows affirmatively that the trial court committed error. The appellate court looks to the record only, and while it may review all matters which can be intelligently considered and disposed of on the record presented, it can consider only matters properly a part of the record and will not consider an assignment of error unless the alleged error affirmatively appears of record. The record on appeal must be so complete as to enable the reviewing court to pass intelligently on the question presented, otherwise the appeal will be dismissed or the judgment affirmed as the practice may require * * *."

This court has repeatedly held that it will not consider an assignment of error unless the assignment of error affirmatively appears of record, and appears from the case-made to be true. Saunders v. State, 4 Okl.Cr. 264, 111 P. 965, Ann.Cas. 1912B, 766; Sweet v. State, 70 Okl.Cr. 443, 107 P.2d 817–821; Herren v. State, 72 Okl.Cr. 254, 115 P.2d 258; Passmore v. State, 87 Okl.Cr. 391, 198 P.2d 439; Clardy v. State, 95 Okl.Cr. 89, 240 P.2d 456; Queen v. State, 23 Okl.Cr. 146, 212 P. 1021, involving excluded evidence, but in point by analogy, and indicating proper procedural practice to preserve the matter for appeal. Slaton v. State, 97 Okl.Cr. 12, 257 P.2d 330, 331, wherein we said:

"The defendant filed a motion to suppress the evidence herein but the record has not been properly preserved to present the same to this court. None of the testimony at the hearing thereon

nor the affidavit and search warrant herein involved was in the record, hence the validity of the search and seizure is not properly before this court for consideration. A case will not be reversed by reason of overruling of motion to suppress the evidence where the case-made does not contain the affidavit, the search warrant, or the evidence taken at the hearing on the motion to suppress. Passmore v. State, 87 Okl.Cr. 391, 198 P.2d 439; Byrd v. State, 91 Okl.Cr. 129, 216 P.2d 596. The case therefore will be determined on its merits."

Here the record is completely uninformative by statement or otherwise as to what the evidence might have shown in this regard. We have no means of determining if the court erred to the detriment of the defendant's substantial rights in overruling the objection to the evidence of the stockbook (not of record) and its importance, and in not hearing evidence on the motion to suppress, which is unsupported by statement or otherwise. Conceding that it was error for the trial court not to hear evidence on the motion to suppress, the defendant's burden did not end there; he should have established upon which ground it was prejudicial. But he elected to leave it dangling and on appeal we are asked to deal in suppositions; but:

"* * * this court cannot deal in suppositions in connection with alleged errors of this kind. The burden is upon the appellant to show that he was prejudiced by the court's action; the rule in this jurisdiction being that injury is not presumed because of error, but that the burden is upon the appellant to show not only error, but injury resulting therefrom."

Johnson et. al. v. State, 15 Okl.Cr. 297, 304, 176 P. 256, 258; United States v. Adamowicz, 2 Cir. 82 F.2d 288; West v. United States, 9 Cir., 12 F.2d 776, 777, wherein it was said:

"The principal assignment relied upon is that the court erred in denying a

motion, made just before the jury was impaneled, to suppress 'all evidence' obtained under the authority of the search warrant, upon the ground that the search and seizure were unlawful. An affidavit of defendant was filed with the motion. The record contains an affidavit for a search warrant and a warrant issued by a United States commissioner. But the question of the sufficiency of the affidavit and warrant need not be considered, for the record fails to include the testimony that was introduced at the trial, and in no way advises the court whether the evidence * * * cannot hold that defendant was prejudiced by the ruling upon the motion."

In Worrell v. State, 91 Ind.App. 259, 171 N.E. 208, 209, it is said:

"If appellant was harmed by the overruling of his motion to suppress, it was incumbent upon him to show affirmatively that such was the case, and this he has failed to do. We may search the record to affirm, but never to reverse. Chappelle v. State, (1925) 196 Ind. 640, 149 N.E. 163."

Such is the situation in the case at bar. There is nothing upon which to predicate a valid opinion. The inadequacy of the motion itself is clearly apparent. The record affirmatively shows that the stockbook was taken from a Mrs. Wesley, which is not an available defense to the defendant, since such right is a personal one. Fitzgerald v. State, 65 Okl.Cr. 1, 83 P.2d 581. This defense could only be raised by Mrs. Wesley under this record.

■ The defendant's next contention is that the state was permitted to cross-examine the defendant in relation to his multifarious connections with the operation of Security Express Corporation. In his testimony, in chief, he made a studied attempt to completely disassociate himself from the Company and its stock herein involved. He testified that he was not an incorporator, an officer, a director, he held no stock, and no one held stock for him, but at one time he owned five shares of stock (later he admitted that at one time he owned ten shares). He also attempted to show that he had little or nothing to do with the H. D. Chapman sale. It then became proper on cross-examination, as going to his credibility and for impeachment, to show that he was the moving spirit in organization of the Security Express Company and that it was his idea, as he said, that he stole from somebody else. It was proper to show by cross-examination that he directed its opertions, helped dictate its organization, sell its stock, collect its funds, deposit and disburse them, in addition to directing the bookkeeper to make as few records as possible. It was also proper to show that there were other corporations operating out of his office, between which the operations and funds were commingled under his direction. This was especially competent under his claim that his connection with Security Express Company was that he was merely giving them office rent.

He further complains that examination concerning Le Van Thomis, the purported president of the company, whom the defendant testified was in Italy, was improper. This was proper for purposes of impeachment since it was shown in rebuttal by competent proof that the defendant himself was Le Van Thomis, that such was his pen name.

It was also proper on cross-examination to show that certain directive written memoranda in defendant's handwriting established his control of the company's operations as to collections, deposits, and disbursements, and company plans. All of the foregoing and other matters elicited on cross-examination fall within the rule of Murphy v. State, 72 Okl.Cr. 1, 112 P.2d 438, 443:

"When a defendant takes the witness stand and testifies in his own behalf, the prosecution has the right to cross-examine him with the same latitude as any other witness. His cross-examination is not confined to a mere categori-

cal review of the matters stated in the direct examination. He may be asked any question on cross-examination pertaining to the matter at issue, or that goes to his credibility as a witness.

"The extent to which a witness may be cross-examined as to matters not relevant to the issue, for the purpose of testing his memory and of affecting his credibility, rests largely in the discretion of the trial court."

Defendant's contention in this regard is without substantial merit. The defendant further asserts that this prosecution must fall for failure of the State to establish by competent proof that the stock herein involved did not fall within the exemptions defined in 71 O.S.A. § 401, sub-section (a) and (b). In this connection defendant contends that this was an isolated sale and not punishable under the law according to sub-section (1) exempting "any isolated non-issuer transaction, whether effected through a broker-dealer or not."

We will not burden this opinion by quoting sub-section (2) which further defines exempt stock transactions. In addition to the foregoing isolated transaction this section includes such transactions as, stock of nonprofit corporation organized for educational, benevolent or charitable purposes; Government securities; commercial paper; Building and Loan Associations; Trust Companies; securities approved by, and listed in, any standard manual approved by the Securities Commission; or securities dealt in on any specified stock exchanges, sheriff's sales, sales by trustees, receivers, guardians, conservators, etc. In fact, the exemptions purport to cover all securities, stocks, trust certificates, etc., which are adequately covered by regulation and supervision through other authorized governmental agencies.

██ Hence, it is apparent that the purpose of the act herein involved is to protect the public against blue-sky promotions and promoters, and other stock transactions not otherwise covered by law. The burden is placed upon the offeror or seller of stock to ascertain if the security may be sold lawfully. The law thus requires registration of the security and the seller to guarantee protection to the public against blue-sky transactions. The presumption necessarily follows that having ascertained that the stock offered or sold falls within the exempt class of securities that matter is peculiarly within the personal knowledge of the offeror or seller. Such being the case, the State is not required to prove a negative which it is the duty of the seller to ascertain before he sells or offers the security for sale. Under these conditions the matter of proving that the security is exempt is an affirmative defense and the burden is upon the defendant to bring himself within the terms of the exemption claimed under the statute. People v. Dean, 131 Cal.App. 228, 21 P.2d 126, 128:

"The law, however, puts the burden of such investigation on the party selling, and it is no excuse if he fails to ascertain if such security cannot in fact be legally sold. He is bound to make such investigation, if the security is not issued by him, before attempting to make a sale thereof, and we may well presume that he did so, as it would not seem reasonable to presume that, knowing the law as he must, he would go ahead with the sale without an independent investigation."

People v. Wilson, 375 Ill. 506, 31 N.E.2d 959; People v. Smith, 315 Ill.App. 100, 42 N.E.2d 119; Lambert v. State, Okl.Cr., 353 P.2d 150, involving non-licensed seller of whiskey, but the principle applies on this point. Herein, the defendant's plea of not guilty amounted to an affirmation that he was selling registered stock. If so, then it was within his personal knowledge and a matter which he could show without the slightest inconvenience. The rule as to sales without a license by analogy is applicable to sales of unregistered stock. Commonwealth v. Freed, 106 Pa.Super. 529, 162 A. 679; Ex parte Kreutzer, 187 Wis.

463, 204 N.W. 595; State v. Silberberg, Ohio Com.Pl., 128 N.E.2d 675.

 The record clearly established that this was not an isolated sale, but one of numerous transactions consummated by the defendant and made in repeated and successive operations. An "isolated sale" means one standing alone, disconnected from any other; "repeated successive sales" means transactions undertaken and performed one after the other, and sales made within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that such sales promote the same aim and are not so detached and separated as to form no part of a single plan. Ersted v. Hobart Howry Co., 68 S.D. 111, 299 N.W. 66. Stated differently, "isolated sales" are those of a non-recurring nature engaged in by persons not engaged in the security business. Geneva Steel Co. v. State Tax Commission, 116 Utah 170, 209 P.2d 208. The word isolated is not a word of art or technical meaning, but is a term the application of which must depend upon the facts of each case. Commonwealth v. Summons, 157 Pa.Super. 95, 41 A. 2d 697–699. Applying the term to the facts herein, the transaction charged in the information was not an isolated one, but one of repeated sales, thus excluding the defendant from the exemptions of the act.

The defendant complains further that the jury returned into court and asked to have read to them certain evidence in relation to the defendant's connections with the corporation's operation in defendant's office, and their interrelationship to the Security Express Company, as well as certain bank accounts upon which he drew checks. Defendant says that the trial court erred in refusing to declare a mis-trial on the grounds that the evidence was immaterial and prejudicial. This evidence, as hereinbefore indicated, was admissible for the purpose of showing the defendants lack of credibility, in light of his efforts to disassociate himself from various phases of these operations. It was within the sound discretion of the trial court to permit the reading of this testimony to the jury. It

is apparent that they were reassuring themselves of the defendant's lack of credibility through this means.

 Finally, the defendant complains of the severity of the punishment imposed. We are of the opinion that in light of the fact that this is the first conviction of the defendant for such an offense, that the ends of justice will be met by reducing the sentence to 18 months in the penitentiary. As so modified the judgment and sentence is affirmed.

POWELL, P. J., and NIX, J., concur.