## GORDON C. PASKE v. LIBERTY EQUITIES CORPORATION.

167 N. W. (2d) 30.

March 28, 1969—No. 41476.

*Lindquist & Vennum, N. L. Newhall, Jr.,* and *David G. Newhall,* for appellant.

*Cant, Haverstock, Beardsley, Gray & Plant* and *Robert E. Bowen,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is an action to recover a real estate commission by an unlicensed broker. The defense was based on Minn. St. 82.16, subd. 2, which provides as follows:

"No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in Minnesota Statutes, Sections 82.01 to 82.16, without alleging and proving that he was a duly licensed real estate broker or salesman at the time the alleged cause of action arose."

The trial court allowed recovery and held that the sale was an "isolated real estate transaction" within the meaning of Minn. St. 1965, § 82.02,

subd. 1(a), which excepted it from the provisions of c. 82, including the licensing requirement of § 82.03.[1] Defendant appeals from the judgment.

In 1959, plaintiff was vice president and general manager of International Properties, Incorporated, which was an unlicensed firm engaged in real estate development. He negotiated leases of a building in the so-called Science Industries Center at New Hope to National Connector Corporation and of a building at 5806 West 36th Street, St. Louis Park, to Control Data Corporation. Upon the merger of International Properties with another corporation, plaintiff resigned his position, but continued to manage the properties leased to National Connector and Control Data. In May 1963, he entered a management contract with defendant's predecessor in interest for a period of 1 year, with power to secure tenants, negotiate leases, initiate legal proceedings, contract for ordinary repairs, and employ personnel. His compensation was 4 percent of gross rentals. To that end, he renegotiated the leases with National Connector and Control Data and arranged new mortgage financing, using the letterhead "G. C. Paske, Real Estate Management."

In August 1966, with knowledge that plaintiff was unlicensed, as the trial court found, defendant's president approached plaintiff and initiated an oral contract to secure plaintiff's services in negotiating the sale of the two properties referred to, for a commission of 1½ percent.[2]

---

[1] This exception was repealed by L. 1967, c. 73, § 1.

[2] Defendant wrote the following letter to plaintiff on September 6, 1966:
"Mr. Gordon C. Paske
Real Estate Management
5605 Kellogg Place
Minneapolis, Minnesota
55424
"Dear Mr. Paske:
"You are hereby authorized to negotiate the sale of our National Connector Building at a minimum price of $535,000.00. It is our understanding that you will cooperate with the A. D. Strong Company in negotiating the sale and we hereby agree to pay to them a commission of 3-1/2 percent of the closing sales price, provided the terms of the sale are satisfactory to us.

Thereafter, plaintiff procured the sale of the New Hope property for the sum of $470,000 and asserted his claim for a commission of $7,050.

In support of its finding that the sale was an "isolated real estate transaction," the trial court in its memorandum assigned reasons with which we are in accord:

"The Court, however, is persuaded by the plaintiff's argument that, in negotiating the sale of the National Connector property, he was acting 'in an isolated real estate transaction' and, therefore, did not fall within the scope of Chapter 82.

"As was pointed out above, the plaintiff initially managed the National Connector and Control Data properties on behalf of his employer, International Properties. When the defendant's successor [sic] in interest, Liberty Real Estate Trust, bought the properties, plaintiff managed the properties for the Trust. After the Trust was reorganized, the plaintiff managed the properties for the defendant. In total, plaintiff managed the properties for over six years and during that time plaintiff engaged in no other real estate transactions. The record, therefore, establishes that, in dealing with the National Connector and Control Data properties, plaintiff was acting in 'an isolated real estate transaction' in that said activities 'stood alone' and 'were disconnected from any other.'"

Defendant earnestly contends that plaintiff's activities as to these two properties do not bring the sale within the exception to the licensing requirement of c. 82 because plaintiff also negotiated leases and mortgages with respect to them, asserting in its brief:

"* * * [The sale] was one of at least 6 separate and distinct real

---

"We further agree to pay to you a commission of 1 1/2 percent of the closing sales price on the same conditions.

"This agreement may be cancelled by us at any time after September 25, in the event no prospective buyer has submitted a contract through you or the A. D. Strong Company.

"Sincerely yours,
"/s/ C. Wyatt Dickerson Jr.
C. Wyatt Dickerson, Jr.
President"

estate transactions involving two independent and unrelated properties under two successive ownerships (conceding the identity of interest between Liberty Real Estate Trust and Liberty Equities Corporation), spanning a period of more than 6 years and dealing in 3 distinct areas of real estate practice for each of the properties—i.e. mortgage financing, leasing and selling."

We are of the opinion that the trial court was correct in treating the sale as an isolated transaction since we do not believe that this was the kind of activity which the legislature intended to prohibit.[3] In Albers v. Fitschen, 274 Minn. 375, 143 N. W. (2d) 841, we observed that c. 82 was enacted to prevent abuses by unqualified or unreliable real estate brokers. In an analogous situation dealing with engineering fees, we said that the statute there involved was to protect the public against incompetence and fraud. Weatherston's Assoc. Services v. Minnesota Mutual Life Ins. Co. 257 Minn. 184, 100 N. W. (2d) 819. However, there, as here, defendant sought out plaintiff, knowing he was not licensed and secured the benefit of his services. We held that the purposes of the statute would not be served by denying compensation. Although the statute there considered did not have the penal provisions of c. 82, the situations are otherwise similar. In the case at hand, there was no fraud, misrepresentation, or incompetence. Both parties were sophisticated and knowledgeable in the real estate field. The two properties which plaintiff managed had been handled by him for a number of years, first as an employee and later under a management contract. So far as the record shows, he dealt with no other property nor did anyone else deal with this property. Under these circumstances, we cannot say that it was the intention of the legislature to treat this sale as one requiring a license so as to deny plaintiff the commission he has earned. Consequently, the judgment of the trial court is affirmed.

Affirmed.

---

[3] Tarsia v. Nick's Laundry & Linen Supply Co. 239 Ore. 562, 399 P. (2d) 28; Nelson v. State (Okla. Cr.) 355 P. (2d) 413.