393 A.2d 995

**COMMONWEALTH of Pennsylvania**

v.

**Robert H. BOMERSBACH, Appellant, and Edward B. Sassaman.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Decided Nov. 3, 1978.

John B. Schaner, Public Defender, Lewistown, for appellant.

Steven M. Steingard, Assistant Attorney General, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

This appeal comes to us from a jury verdict in Mifflin County which found appellant Robert Bomersbach guilty of six different counts in violation of the Pennsylvania Securities Act.[1] Appellant's post-trial motions were denied. We affirm the decision of the lower court.

The events that led to the conviction occurred between June 1, 1972 and October 31, 1972. During this time, appellant conducted meetings with potential investors concerning two corporations that were to be formed. Appellant portrayed himself as the organizer of the corporations and that he held a securities license and would clear the security sales through the Pennsylvania Securities Commission. Fourteen such investors testified of their investments to these two fictitious corporations, and how they were informed that their money would be placed in an escrow account. In fact, appellant was not licensed with the state; the investment money was not placed in an escrow account but was transferred to appellant's wholly-owned corporation. None of the investors' monies was returned nor were the corporations formed.

Appellant was convicted of selling the securities of the alleged corporations without being registered as a dealer in violation of Section 3(a) of the Act, 70 P.S. § 33(a) of the Act, issuing a prospectus which was not filed with the Pa. Securities Commission in violation of § 13(a) of the Act, 70 P.S. § 43(a); failing to file a notice of intention to sell securities in violation of § 13(c) of the Act, 70 P.S. § 43(c); and committing fraud in connection with the sale of securities in violation of Section 22 of the Act, 70 P.S. § 52. He was sentenced to imprisonment for a period not less than 15 months nor more than 11 years, to pay fines of $3000, one-half the costs of prosecution, and to pay restitution.

On appeal, appellant raises three issues: first, whether he was a "dealer" within the meaning of the Pennsylvania

1. Act of June 24, 1939, P.L. 748, § 1; 1941, July 10, P.L. 317, § 1; 70 P.S. § 31 et seq. (1965).

Securities Act § 2(f); [2] second, whether there was sufficient evidence to convict appellant of fraud under § 2(i) of the Act; and three, whether the lower court properly imposed consecutive and separate sentences for the counts upon which appellant was convicted.

## I.

All counts of the indictment under which appellant was convicted allege him to have been a dealer under the Act. "Dealer" is defined as

".   .   . [A]ny person other than a salesman who engages in this State, either for all or part of his time, directly or through an officer, director, employe, or agent (such officer, director, employe or agent not being registered hereunder as a dealer) in selling securities issued by such person.   .   .   ."

Appellant contends that he was not a "dealer" in securities as defined under Section 2(f) of the Securities Act, 70 P.S. § 32(f), but that he falls within two sections of the list of transactions that exclude a dealer from the purview of the Act. Appellant claims his situation is within Section 2(f)(3) which reads:

"Isolated transactions in which securities are sold by the owner thereof or by his agent for the owner's account, such sales not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such agent, and such owner or agent not being the underwriter of such securities." 70 P.S. § 32(f)(3).

Appellant also argues he falls within Section 2(f)(17) which reads:

"The sale to not more than three persons of subscriptions for shares of capital stock of a corporation prior to the incorporation thereof under the laws of this State, when no expense is incurred and no commission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such securities."

2. 70 P.S. § 32(f).

We find that the testimony adduced at trial clearly shows appellant to have been a dealer within the meaning of the Act and that he did not fall within any of the transactions which would exclude him from the penalties. First, the sales of preincorporation subscriptions were far from isolated. The meetings with potential investors spanned a period of four months wherein the sales were made. In *Commonwealth v. Summons,* 157 Pa.Super. 95, 41 A.2d 697 (1945) the court said that where sales of stock "recur within such reasonable time as to indicate an association of acts under one general purpose, such sales are not 'isolated' but are within 'the course of repeated and successive transactions.'" 157 Pa.Super. at 98–99, 41 A.2d at 699. We find, as in *Summons,* that the criteria for the applicability of Section 2(f)(2) are not met in this case.

As for Section 2(f)(17), appellant contends there was not proof of sale to more than three persons nor was there compensation received by Bombersbach other than shares of stock. The testimony concerning these two points is to the contrary. Fourteen investors testified to their purchase of the preincorporation subscriptions for two corporations. Furthermore, it was stipulated to by counsel that appellant's wholly-owned corporation received monies from the sales of stock which were used for appellant's personal use.[3] The requirements for the application of Section 2(f)(17) are not met and appellant's argument on this point is without merit.

Appellant contends further that the sale of preincorporation subscriptions was not the sale of "securities" as defined under the Act. The Act defines security as a " . . . subscription or preorganization certificate . ." 70 P.S. § 32(a). Appellant does not dispute that is exactly what he sold.[4] We also note that the Pennsylvania Securi-

---

3. N.T. 481, 521–524.

4. For a discussion of a "security" as being an investment contract and "risk capital" see *S.E.C. v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Pa. Sec. Com. v. Consumers Research Consultants, Inc.,* 414 Pa. 253, 199 A.2d 428 (1964); *Com. of Securities v. Hawaii Market Center, Inc.,* 52 Haw. 642, 485 P.2d

ties Act is remedial in nature and is drafted to protect the investing public. Therefore, the section of the Act which delineates the classes of investments that are to be protected must be liberally construed. *Commonwealth v. Yaste,* 166 Pa.Super. 275, 70 A.2d 685 (1950).

The burden to prove appellant was a dealer in securities was on the Commonwealth. *Commonwealth v. Gabriel,* 195 Pa.Super. 411, 171 A.2d 538 (1961). We agree with the lower court that the Commonwealth met that burden. The burden fell on appellant to prove he was subject to an exemption under the Act, *Commonwealth v. Harrison,* 137 Pa.Super. 279, 8 A.2d 733 (1939), which he did not meet.

## II.

Appellant's second contention is that there is insufficient evidence to convict him of fraud under the Pennsylvania Securities Act. Section 2(i) of the Act defines "fraud," "fraudulent," or "fraudulent practice" very broadly.[5] Based on this definition and the testimony given at trial, we find there was sufficient evidence to convict appellant of fraud. Appellant represented that the investors' monies would be

105; *State ex rel. Healy v. Consumer Business System, Inc.,* 5 Or.App. 19, 482 P.2d 549 (1971) and the opinion of the lower court in this case.

5. " 'Fraud,' 'fraudulent,' or 'fraudulent practice.' The terms 'fraud,' 'fraudulent,' and 'fraudulent practice' include any misrepresentation, in any manner, of a relevant fact not made honestly and in good faith; any promise, representation or prediction as to the future not made honestly and in good faith; an intentional failure to disclose a material fact; any fictitious or pretended purchase or sale of securities; the gaining, directly or indirectly, through the sale of any security, of any underwriting or promotion fee or profit, selling or managing commission or profit so gross and exorbitant as to be unconscionable and fraudulent; any scheme, device or other artifice to obtain such a profit, fee, or commission or to defraud any customer, client, subscriber or prospective customer, client or subscriber of his securities, money or property and any act, practice, transaction or course of business which is fraudulent or which has operated or would operate as a fraud upon a customer, client or subscriber or prospective customer, client or subscriber: Provided, however, That nothing herein shall limit or diminish the full meaning of the terms 'fraud' and 'fraudulent' as applied or accepted in courts of law or equity."

placed in an escrow account until the corporations were organized and the stock offerings would be cleared by the Pennsylvania Securities Commission, none of which took place. He represented that his wholly-owned corporation would pay the expenses until a public offering of stock would be made when in fact substantial amounts of the proceeds were transferred to appellant. Appellant failed to disclose that some of these proceeds were used to purchase a mobile home for his father. He further represented he would be paid in shares of stock when he actually received the proceeds of the sale, and he represented he held a securities license when, in fact, he did not. These examples more than adequately show that a jury could have correctly found appellant guilty of fraud under the Act.

Appellant argues there was no proof of misrepresentation of an existing fact nor reliance thereon by another to his injury. He bases his contention on the proviso at the end of the definition of "fraud" in the Act, which he construes to limit the definition of fraud to that of common law fraud or deceit. Even if we would adopt that construction, which we do not feel is necessary,[6] there still is sufficient evidence upon which a conviction of fraud could be based in this case.

### III.

Finally, appellant argues that the separate and consecutive sentences may not stand because the same offense is charged in more than one count and restitution is not one of the remedies afforded under the Act. Once again, we do not find merit in appellant's claim.

---

**6.** Appellant argues that " . . . [p]rovisos shall be construed to limit rather than to extend the operation of the clauses to which they refer . . . ." 1 Pa.C.S.A. § 1924, which he construes to mean the definition of fraud must be limited to common law fraud. However, the lower court construed the proviso only to mean that the usage of fraud in law and equity shall not limit or diminish the preceding definition of fraud under the Act. This is consistent with the new Securities Act which provides " 'Fraud,' 'deceit' and 'defraud' are not limited to common law fraud or deceit." 70 P.S. § 1–102(h).

■ The test for whether one offense merges with another is "whether one crime necessarily involves another . . ." *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920; *Commonwealth v. Olsen,* 247 Pa.Super. 513, 372 A.2d 1207 (1977); *Commonwealth ex rel. Hnat v. Ashe,* 165 Pa.Super. 25, 67 A.2d 769 (1949). Although the crimes involved in this case are similar, each count delineates a separate offense. For example, the selling of the stock was with respect to two corporations, each sale of which is punishable separately. All the rest of the sentences are based on offenses from separate sections of the Act. As for the restitution ordered by the court, the record from the lower court's sentence states the order was made pursuant to an agreement with the then counsel for appellant at a pre-sentence hearing.[7]

Sentence of the lower court is affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.

___

7. The trial judge had authority to enter the restitution under the then existing Act of November 27, 1970, P.L. 790, No. 257, § 1, as amended by Act of September 22, 1972, P.L. 876, No. 200, § 1; 18 P.S. § 5109.